**UNITED STATES of America, Appellee,**

v.

**Henry BOST a/k/a Scooter, Appellant.**

**No. 91–2447.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 7, 1992.

Decided July 6, 1992.

Frank R. Fabbri, III, St. Louis, Mo., argued, for appellant.

Howard J. Marcus, Asst. U.S. Atty., St. Louis, Mo., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Henry Bost appeals from the sentence he received after pleading guilty to one count of conspiracy to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (1988), 21 U.S.C.A. § 841(b) (West Supp.1992), and 21 U.S.C.A. § 846 (West Supp.1992). Bost claims that the district court erred in enhancing his sentence for (1) possessing a firearm during the commission of the offense, and (2) playing a leadership role in the offense. We hold that the firearm enhancement was improper, while the leadership role enhancement was not. We vacate Bost's sentence and remand to the district court to resentence him pursuant to our instructions.

Bost engaged in a number of drug transactions in St. Louis, Missouri. On September 24, 1990, he sold 12.39 grams of heroin to a confidential informant at a White Castle parking lot. On September 26, 1990, Bost agreed to sell heroin to a confidential informant. Bost gave Louis Thomas 12.48 grams of heroin, which Thomas sold to the informant at a Kentucky Fried Chicken

parking lot. Bost made a third transaction on October 25, 1990, at the Voyager Lounge, where Thomas gave a confidential informant 10.34 grams of heroin, and Bost received the informant's money. The next drug transaction occurred on October 29, 1990, at the High Rollers Mini–Mart, a business that Bost co-owned with his mother and sister. There, Bost and Thomas gave a confidential informant 1.8 grams of heroin to make up a shortage in a prior delivery. A second drug transaction at the High Rollers Mini–Mart occurred on November 29, 1990. Bost agreed to sell heroin to a confidential informant, who saw Larry Williams arrive at the store and give heroin to Bost, after which Bost sold the heroin, weighing 11.98 grams, to the informant.

On February 15, 1991, law enforcement officers executed warrants simultaneously on Bost's residence and the High Rollers Mini–Mart. Police seized three weapons from Bost's residence: a Sturm Ruger .44 caliber revolver, a Smith and Wesson .357 magnum revolver, both of which had been reported stolen, and a Mossberg .12 gauge pump shotgun. At the High Rollers Mini–Mart agents seized a Sturm Ruger mini 14 .223 semi-automatic rifle, which had previously been purchased by one Harry Binion. The government originally indicted Binion with Bost, but eventually dismissed all charges against him.

A six-count indictment named others, and charged Bost with one count of conspiracy to distribute heroin and five counts of distribution of heroin. Pursuant to a plea agreement, the government dropped the distribution counts in exchange for Bost's agreement to plead guilty to the conspiracy count.

The Presentence Report (PSR) determined that Bost's criminal history category under the Sentencing Guidelines was I, and calculated his base level at 20. The PSR suggested a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. (Nov. 1, 1991). It also called for a two-level enhancement for possession of a firearm during the commission of the offense pursuant to U.S.S.G. § 2D1.1(b)(1)

(Nov. 1, 1990), and an additional two-level enhancement under U.S.S.G. § 3B1.1(c) (Nov. 1, 1991) for Bost's leadership role in the crime. The district court followed the PSR in fixing Bost's total offense level at 22, with a sentencing range of 41–51 months. The district court sentenced Bost to a term of 42 months, with a supervised release term of three years. Bost appeals from his sentence.

I.

■ Bost first argues that the district court clearly erred in enhancing his sentence under section 2D1.1(b)(1) based on the weapons seized at his residence and the High Rollers Mini–Mart nearly two and one-half months after any overt acts of the conspiracy occurred. Bost points out, and the government concedes, that no one ever saw Bost or his colleagues possess a weapon; nor was there even any discussion about weapons during any of Bost's drug transactions. Moreover, the government does not dispute that there was no evidence that drug transactions occurred in Bost's home, where three of the weapons were found.

■ We do not disturb the district court's factual determinations in applying the Sentencing Guidelines unless they are clearly erroneous. *United States v. Turpin*, 920 F.2d 1377, 1386 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991); *United States v. Koonce*, 884 F.2d 349, 353 (8th Cir.1989); 18 U.S.C.A. § 3742(e) (West Supp.1992).

■ The version of section 2D1.1(b)(1) in effect at the time of Bost's sentencing states: "If a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1) (Nov. 1, 1990). Application Note 3 of the Commentary to the guideline provides in part that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the

offense."[1] Therefore, the government must first show that the weapon was present, and second, that it was not clearly improbable that the weapon had a nexus with the criminal activity. *See United States v. Vasquez*, 874 F.2d 250, 251 (5th Cir.1989) (under section 2D1.1(b)(1), weapon must be present and it must be probable that the weapon was connected with offense). *But see United States v. Atterson*, 926 F.2d 649, 663 (7th Cir.) (section 2D1.1(b)(1) "does not require that the government show a connection between the weapon and the offense, only that the weapon was possessed during the offense"), *cert. denied*, —— U.S. ——, 111 S.Ct. 2909, 115 L.Ed.2d 1072 (1991); *United States v. Restrepo*, 884 F.2d 1294, 1296 (9th Cir.1989) (same).

While we have not yet decided what the government's burden should be in proving that a weapon was present during the charged offense, we have held that "the Government must prove the factual prerequisites to a sentence enhancement by a preponderance of the evidence." *United States v. Townley*, 929 F.2d 365, 370 (8th Cir.1991). *United States v. Hooten*, 942 F.2d 878 (5th Cir.1991), in applying this evidentiary standard to a section 2D1.1(b)(1) enhancement, held that:

> [T]he government can prove that the defendant personally possessed the weapon by showing that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant. Generally, the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred.

*Id.* at 882 (citations omitted).

We have acknowledged that weapons are generally considered to be "tools of the narcotics dealer's trade," *United States v. LaGuardia*, 774 F.2d 317, 320 (8th Cir. 1985), but we have held that the mere presence of a weapon is not sufficient to justify a sentence enhancement. *Turpin*, 920 F.2d at 1386. Moreover, "[t]he government has the burden of establishing a relationship between a defendant's possession of the firearm and the offense which he or she has committed." *United States v. Nash*, 929 F.2d 356, 358 (8th Cir.1991). *See also United States v. Pou*, 953 F.2d 363, 371 (8th Cir.) ("A firearm possessed by a convicted drug offender must be connected with the drug offense of conviction before its possession can be used to enhance his sentence."), *cert. denied*, —— U.S. ——, 112 S.Ct. 1982, 1983, 118 L.Ed.2d 580, 581 (1992). We first consider whether the firearms were actually present during Bost's criminal activity, which occurred some two and one half months before the weapons were discovered at Bost's residence and business.

We have allowed enhancements based upon findings that the defendant "constructively" possessed a weapon during the offense. In *United States v. Luster*, 896 F.2d 1122 (8th Cir.1990), we upheld a sentence enhancement based on evidence that weapons were seen inside the defendant's house while he conducted drug transactions, and the defendant acknowledged his ownership of weapons and voiced his willingness to use them if necessary. *Id.* at 1125, 1129. We stated in *Turpin* that the government does not have to show that a defendant used or touched a weapon in his possession to prove a connection between the weapon and the charged offense. 920 F.2d at 1386. We affirmed the district court's finding that the defendants possessed a weapon in connection with their criminal activity based on the testimony of an eyewitness who saw a gun inside the car the defendants used to make drug transactions. *Id.* at 1381, 1386.

We have had cases with a lapse between the time the defendant committed the charged acts and the time weapons were seized from the defendant's possession, but

---

1. Bost's attorney claims that a November 1991 amendment deleted the word "clearly" from application note 3 of section 2D1.1(b)(1). However, he relied on the commentary to U.S.S.G. § 2D1.11, which contains a nearly identical phrase, but omits the word "clearly." U.S.S.G. § 2D1.11, comment. (n. 1). This was not the guideline applied to enhance Bost's sentence, if indeed the existence of the word "clearly" dictates a different result.

none as long as the one in this case. In *Koonce,* we affirmed an enhancement based upon weapons seized eight days after the defendant mailed a package containing methamphetamine to an undercover agent. 884 F.2d at 351, 354. Even though no one had seen the defendant actually possess the weapons, we upheld the enhancement because the government had established a relationship between the seized weapons and the defendant's criminal activity. *Id.* at 354. Along with the weapons, officers had discovered additional methamphetamine, a letter in the defendant's briefcase regarding previous drug deals he had made, and the address to which he had mailed the package of methamphetamine. *Id.* at 351, 354. *See also United States v. Figueroa,* 900 F.2d 1211, 1214, 1218 (8th Cir.) (enhancement upheld when loaded gun was found in defendant's apartment two days after drug transactions occurred in apartment), *cert. denied,* 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 675 (1990).

Here we have a two and one-half month time lapse between the criminal activity and the discovery of weapons. The government provided no evidence that the weapons seized at Bost's residence and the High Rollers Mini–Mart were present when Bost committed the charged offense or that Bost possessed them. There is no temporal or spatial relationship between Bost's drug trafficking and the weapons seized in his home. No drug transactions ever occurred there; neither were any drugs or drug paraphernalia discovered in the house.

▆▆▆ The weapons discovered at the Mini–Mart present a closer question, since two drug transactions occurred there. However, there was no evidence that the firearm was possessed by Bost or was present at the time of the drug transactions. No witnesses saw any weapon being used, and there is no evidence that weapons were discussed or even suggested during the drug transactions. The weapon had been purchased by Harry Binion, one of Bost's indicted coconspirators who eventually had all counts dismissed against him. But most important, there is no contemporaneity between Bost's charged offense and the discovery of the weapon at the Mini–Mart. The government argues that the conspiracy to distribute heroin continued until the time of Bost's arrest on February 15, 1991, and that therefore, the weapons were present during the time the offense was committed. The government states that "[t]here is nothing to show that at the time of [Bost's] arrest he was no longer involved in trafficking or no longer involved in the ongoing conspiracy." This argument is unpersuasive. Bost's guilty plea was to a conspiracy ending February 9, 1991, with the last overt act occurring at the High Rollers Mini–Mart on November 29, 1990. It is significant that when the search warrants were executed at Bost's residence and the High Rollers Mini–Mart on February 15, 1991, only weapons were found—not drugs. The government bears the burden of proof in establishing a guidelines enhancement, *e.g., United States v. Dinges,* 917 F.2d 1133, 1135 (8th Cir.1990); *United States v. Williams,* 905 F.2d 217, 218 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991), and it has simply offered no evidence to prove the tie between the weapons and Bost's offense.

Because the government has presented no evidence that Bost possessed any of these weapons during the conspiracy, we are left with the firm and definite conclusion that the district court clearly erred in finding that the weapons were connected with Bost's charged offense.[2]

## II.

▆▆▆ Bost next argues that the district court clearly erred in enhancing his sen-

---

**2.** This situation is not akin to the one in *United States v. Quintero,* 937 F.2d 95 (2d Cir.1991), where the court affirmed a sentence enhancement based on the defendant's possession of a weapon one month after the defendant's offense of conviction. *Id.* at 97–98. The government originally brought against the defendant a number of drug charges covering acts committed both before and after the defendant was seen with the weapon, but pursuant to a plea agreement, the defendant pleaded guilty only to an offense he committed before being seen with the weapon. *Id.* at 95–97.

tence ·under U.S.S.G. § 3B1.1(c)[3] for his leadership role in the offense. He contends that role enhancement can only be considered with respect to the defendant's relationship to those participants criminally responsible for their acts. Because all but one of his original coconspirators charged in the indictment were cleared of any charges, and the remaining coconspirator, Louis Thomas, participated equally with him in the conspiracy, Bost claims that he should not be considered a leader in the offense such as to justify an enhancement.

Bost's references to "participants" and "criminally responsible" are irrelevant here, as those phrases are from section 3B1.1(a) and (b) and the related commentary. Bost's enhancement was under section 3B1.1(c), which allows for enhancement simply if the defendant "was an organizer, leader, manager, or supervisor in any criminal activity...."

 Bost's argument that he and Louis Thomas were equal participants in the conspiracy is equally unavailing. The district court agreed with the statement in the PSR that Bost was the most culpable of those originally indicted in the conspiracy, "as he was the leader in the offense." The district judge had presided over the trial of one of Bost's co-conspirators,[4] and based his decision to enhance Bost's sentence in part on testimony and evidence he heard indicating that Bost played a leadership role in the drug trafficking. Moreover, Bost's attorney conceded at the sentencing hearing that Bost set the price for one of the drug transactions, and that "Mr. Bost may well be considered the most culpable" because he was chemically dependent during the time of the heroin transactions. Based upon these factors, we conclude that the district court was not clearly erroneous in determining that Bost played a leadership role in the offense.

We affirm the district court's two-level enhancement of Bost's sentence under section 3B1.1(c), but reverse the enhancement under section 2D1.1(b)(1). We therefore vacate the sentence and remand with instructions to the district court to resentence Bost based on an offense level of 20.

---

**3.** Section 3B1.1(c) provides that the defendant's offense level must be increased by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity...."

**4.** The district judge acknowledged that this co-conspirator, Larry Williams, was acquitted at trial, but he still believed that he could consider the evidence presented regarding Bost's role in the conspiracy. *See United States v. Hoelscher,* 914 F.2d 1527, 1531–32, 1544 (8th Cir.1990) (up-

holding district court's enhancement of defendant's sentence based upon testimony district judge heard at coconspirators' trial), *cert. denied,* —— U.S. ——, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991).

Bost argues that the evidence from Williams' trial constitutes hearsay and violates his rights under the Confrontation Clause. Bost failed to raise this issue at the district court, precluding our consideration of it on appeal.