**UNITED STATES OF AMERICA,**
Appellee,

v.

**Richard W. BRITTON, Appellant.**

No. 95–1598.

United States Court of Appeals,
Eighth Circuit.

Submitted June 13, 1995.

Decided Oct. 19, 1995.

Albert Shawe Watkins, argued, Clayton, Missouri, for appellant.

Richard Lee Poehling, Assistant United States Attorney, argued, St. Louis, Missouri, for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HENLEY, Senior Circuit Judge.

Richard W. Britton appeals from a judgment of the district court[1] entered upon a conviction for distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and a 97–month sentence. We affirm.

Britton and others were the targets of a narcotics investigation. On January 21, 1994, undercover police officer Jana Malady and an informant, who was equipped with a recording device, went to Britton's "quick shop," where Britton sold Malady cocaine. Because the investigation was ongoing, Britton was not arrested at that time, but was eventually arrested at the quick shop on September 29, 1994. During subsequent searches of the shop and Britton's home, officers seized a pistol and marijuana from the office where Britton sold Malady the cocaine and drugs from the home. While in custody, Britton admitted he was a drug dealer and had used the pistol during "all of his transactions."

At trial, in addition to Malady's testimony and the testimony of other agents, the government introduced an audio recording of the January 21 transaction and provided the jury with a transcript of the recording, which Malady had prepared.

1. The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

■ On appeal, Britton first argues that the district court erred in allowing a government witness to instruct the jury on the use of audio headphones. He relies on *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654 (1954), in which the Supreme Court held that "[i]n a criminal case, any private communication ... with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of ... the directions of the court made during trial, with full knowledge of the parties." Britton also relies on *Turner v. Louisiana*, 379 U.S. 466, 473, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965), in which the Supreme Court held that prejudice was inherent in the "continuous and intimate association" between two sheriff deputies who were key prosecution witnesses and custodians of the sequestered jurors. Britton's reliance on these cases is totally misplaced. Unlike *Turner*, in this case the agent was not a key witness and his contact with the jury was brief. Unlike *Remmer*, the agent's contact with the jury was not "private" but was made in open court and with Britton's consent. Therefore, we find no error, much less plain error.

■ We also reject Britton's argument that the district court erred in permitting the jury to use a transcript of the tape recording prepared by Malady. Britton asserts that the court failed to follow *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). We disagree. In *McMillan*, the court allowed a government witness to read government-prepared transcripts of tape recordings to the jury. This court did not find reversible error, noting "it may be appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to the tapes." *Id.* at 105. However, this court cautioned that "[t]ranscripts should not ordinarily be read to the jury[,] [be] given independent weight[,] [or] be admitted into evidence." *Id.* at 105–06. In addition, we indicated that the district court should instruct jurors that they should "rely on what they hear rather than on what they read." *Id.* at 106. Here, the court followed *McMil-*

*lan;* the transcript was not admitted into evidence and the court instructed the jurors that if they "perceived any variation between the tape ... and what is written on the transcript, you are to be guided solely by the tape and not the written transcript." Although Britton suggests that the transcript was inaccurate, "[n]either in his brief nor at oral argument, [ ] has he pointed to any specific inaccuracy, material or otherwise." *United States v. Riascos*, 944 F.2d 442, 444 (8th Cir.1991). Therefore, "[w]ithout specific allegations of error to guide us, we must assume that the transcripts were accurate representations of the tapes." *Id.* Moreover, at oral argument, Britton conceded that the government had provided him with the tape recordings before trial and that he had an opportunity to prepare his own transcript. *Cf. United States v. Nicholson*, 815 F.2d 61, 63 (8th Cir.1987) (no reversible error in admission of tape recording with substantial inaudible portions because "parties had the opportunity to argue to the jury their versions of what was contained on the inaudible portions").

Last, Britton challenges the district court's two-level enhancement of his sentence for possession of a firearm during commission of the offense under U.S.S.G. § 2D1.1(b)(1). Note 3 to the section provides that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." The presentence report (PSR) recommended the enhancement based on the seizure of the pistol from the quick shop at the time of Britton's arrest in September 1994. Britton objected to the enhancement. At the sentencing hearing, an officer reiterated trial testimony that while in custody Britton admitted that he had used the pistol "during all of his transactions" because of the amount of money that was involved. Britton did not dispute the testimony and the court overruled his objection, finding that it was not clearly improbable that the pistol was connected with the offense.

■ In the district court, the government must prove by a preponderance of the evidence that it was not clearly improbable

that the weapon was connected to the charged offense. *United States v. Shields,* 44 F.3d 673, 674 (8th Cir.1995). On appeal, "[w]e will not reverse the [d]istrict [c]ourt's conclusion that the weapon was connected to the offense unless it is clearly erroneous." *United States v. Baker,* 64 F.3d 439, 441 (8th Cir.1995).

■ Britton argues that the district court erroneously applied the enhancement because the government failed to prove the required nexus between the cocaine sale and the pistol, noting the pistol was seized eight months after the sale. He relies on *United States v. Bost,* 968 F.2d 729 (8th Cir.1992), in which this court held that a district court had erred in applying the firearm enhancement where weapons were seized two and one-half months after commission of the charged acts. In *Bost,* we noted that cases had upheld the enhancement even though there were lapses in time between seizure of firearms and commission of offenses if the government established a nexus between the firearms and the offense. *Id.* at 732–33, citing *e.g., United States v. Koonce,* 884 F.2d 349, 351, 354 (8th Cir.1989) (nexus between weapon seized eight days after drug offense and offense because drugs and letter regarding defendant's drug deals were seized with weapon). However, in *Bost* we held that the enhancement was inapplicable because "[t]he government provided no evidence that the [seized] weapons ... were present when [defendant] committed the charged offense or that he possessed them." 968 F.2d at 733. In particular, we noted no evidence suggesting that weapons were present during the drug deals and found it "significant that when the search warrants were executed ... only weapons were found—not drugs." *Id.* Britton also notes the recent case of *United States v. Shields,* 44 F.3d at 674–75, in which we also held that a firearm enhancement was improper based on a seizure of a weapon thirty-seven days after the last known drug

transaction "[b]ecause the government presented no evidence regarding the presence of the weapons and their nexus to the drug crimes." Again, we found it significant that "no additional drugs were discovered at the time of the seizure." *Id.* at 674 n. 1.

Although, as Britton suggests, the length of time between the seizure of a firearm and a charged offense may be relevant in determining whether there is a nexus between a firearm and the offense, it is not controlling. *See United States v. Matthews,* 5 F.3d 1161, 1166 (8th Cir.1993) (where nexus between weapon seized one year after offense and offense was "not readily apparent," we remanded for factual findings regarding nexus).[2] In the circumstances of this case, we do not believe that the eight-month lapse between the seizure of the pistol and the cocaine sale makes a nexus between the weapon and the sale clearly improbable. As a government witness explained at trial, Britton was not arrested after the sale because the narcotics investigation continued. More importantly, unlike *Bost* and *Shields,* in this case the government introduced evidence establishing a nexus between the pistol and the cocaine sale. First, the pistol was found along with drugs in Britton's office—the site of the cocaine sale—and following his arrest Britton admitted that he was a drug dealer and had used the pistol during "all his transactions" because he frequently carried a large amount of money. *See United States v. Baker,* 64 F.3d at 441 (defendant's admissions supported firearm enhancement). We disagree with Britton that the district court should not have relied on his statement that he used the pistol for "all of his transactions" because he may have been referring to legitimate business transactions.[3] Given that the statement was made after his arrest for a drug offense and while in custody he also admitted being a drug dealer, the district court properly relied on the statement as evidence that it was *not clearly improbable*

---

2. On remand, the government conceded there was no evidence in support of the firearm enhancement. *United States v. Matthews,* 29 F.3d 462, 463 (8th Cir.1994).

3. Britton, who was a licensed firearm dealer, also argues that application of section

2D1.1(b)(1) to a licensed firearm dealer is discriminatory on its face and a "perversion" of the purpose of the guideline. This argument is clearly without merit. As with all defendants, the government must prove a nexus between a firearm and a firearm dealer's illegal conduct.

that the pistol was connected to the cocaine sale. Therefore, we hold that the district court did not err in applying the firearm enhancement.

Accordingly, the district court's judgment is affirmed.