_____

No. 95-2591
_____

United States of America,     *
                              *
        Appellee,              *
                              *
    v.                         *  Appeal from the United
                              *  States District Court for the
Peter Robert Betz,             *  Eastern District of Missouri.
                              *
        Appellant.             *


_____

Submitted:  January 9, 1996

Filed:  April 24, 1996
_____


Before WOLLMAN, Circuit Judge, CAMPBELL,* Senior Circuit Judge, and
MURPHY, Circuit Judge.


_____

    *The HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit
Judge for the First Circuit, sitting by designation.

CAMPBELL, Senior Circuit Judge.

Defendant-appellant Peter Robert Betz was indicted in the United States District Court for the Eastern District of Missouri for knowingly manufacturing, culturing and harvesting marijuana plants on federal property in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii), and 841(b)(5), possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and use of firearms during the commission of a drug crime in violation of 18 U.S.C. § 924(c)(1). Betz pled guilty to the first two charges and the gun charge was dismissed as part of the plea agreement. An evidentiary hearing was then held on Betz's objections to the calculation of his offense level in the Presentence Report. The district court accepted the offense level as set forth in the Presentence Report and sentenced Betz within the Sentencing Guidelines range for that level. Betz appeals from his sentence.

**I.**

In 1992, the United States Department of Agriculture, Forest Service, received reports from local residents who suspected Betz of growing marijuana in the Mark Twain National Forest, Carter County, Missouri. Forest Service officers began investigating the area of the National Forest surrounding Betz's residence. They observed Betz driving a motorcycle in the National Forest and backtracked the motorcycle tracks to a marijuana patch in a clearing. The officers located several other marijuana patches within a five to seven mile radius of Betz's residence. In most of the patches, there were groups of three to five plants enclosed by a circular chicken wire ring, and the chicken wire enclosure was anchored to the ground with wooden stakes. Forest Service officers

continued to monitor marijuana patches with these characteristics during the 1992 growing season and found 34 patches containing 255 marijuana plants in the area of the National Forest around Betz's

residence.  During 1993, the officers found 57 marijuana patches containing 462 plants.  The officers recorded the location of each marijuana patch on a topographical map of the forest.

In September 1993, a surveillance camera set on one of the patches showed Betz pruning and harvesting marijuana.  Having obtained a search warrant, the officers searched Betz's home, where they found several kilograms of marijuana, some marijuana seeds, a scale, two chicken wire rings, a map of the National Forest, $5,600 in cash, and other drug paraphernalia.  Four firearms were also seized at the residence.  Betz admitted that he had been growing marijuana for about three years and that the cash found at his residence was drug proceeds.

Betz pled guilty to manufacturing marijuana and possessing the drug with the intent to distribute it.  In the plea agreement, the parties reserved the right to contest the quantity of marijuana attributed to Betz and his offense level.  A Presentence Report was prepared by the United States Probation Office, and Betz objected to the amount of marijuana, 722.45 kilograms, for which he was held accountable in determining his offense level.  Betz also objected to the two-level enhancement to his offense level for possession of a dangerous weapon in connection with a drug crime (U.S.S.G. § 2D1.1(b)(1)).

After an evidentiary hearing, the district court found that Betz was responsible for 722.45 kilograms of marijuana and that the § 2D1.1(b)(1) two-level increase in his offense level for possession of a dangerous weapon was warranted.  Under the Sentencing Guidelines this translated into an offense level of 29 and a sentencing range of 87 to 107 months in prison.  The district court sentenced Betz to 87 months in prison on the manufacturing

-4-

count and 60 months in prison on the possession count, to run concurrently, followed by four years of supervised release.

Betz makes two arguments on appeal.  First, he contends that the district court erred in overruling his objection to the quantity of marijuana attributed to him for sentencing purposes.  He contends that the prosecution failed to produce sufficient evidence to link him to the vast majority of marijuana plants included in his offense level calculation.  Second, Betz contends that the district court erred in enhancing his offense level for possession of a firearm in connection with a drug offense pursuant to U.S.S.G. § 2D1.1(b)(1).  No evidence exists, he says, of a nexus between his possession of the firearms seized from his residence and his drug activities.  We address each of these arguments below.

**A.    Quantity of Marijuana**

The district court overruled Betz's objection to the quantity of marijuana, 722.45 kilograms, attributed to him in the Presentence Report.  This figure represents the sum of the 2.91 kilograms of marijuana found at Betz's residence during the execution of the search warrant, 2.54 kilograms of marijuana estimated as the quantity one could purchase for the $5,600 in drug proceeds seized from Betz's residence, and 717 kilograms representing some 717 marijuana plants found in the Mark Twain National Forest that were attributed to Betz.[1]  Betz denied there

---

[1]For purposes of calculating Betz's base offense level under the Sentencing Guidelines, one marijuana plant is equivalent to one kilogram of marijuana.  The Sentencing Guidelines provide that:

> [i]n the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as

was evidence sufficient to tie him to most of the latter, even under the "preponderance of the evidence" standard applicable at a sentencing hearing.

The district court accepted the government's attribution to Betz of all of the marijuana plants encircled by chicken wire found in the National Forest in 1992 and 1993, as well as all plants without surrounding chicken wire found in 1993 in locations that had had chicken wire in 1992.  The court also attributed to Betz some plants surrounded by an old garden fence rather than chicken wire, and some plants found in a ditch without chicken wire.  All of these attributed plants were within a radius of seven miles from Betz's residence. Betz does not question the accuracy of the number and location of the described marijuana plants.  Rather, he denies that the circumstantial evidence was sufficient to link him to the plants as ones he tended and meant to harvest.

In determining drug quantity, "[t]he government bears the burden of proving by a preponderance of the evidence the quantity of drugs involved."  United States v. Smiley, 997 F.2d 475, 481 (8th Cir. 1993).  The district court's factual findings as to the amount of drugs attributable to a defendant will not be overturned unless clearly erroneous, United States v. Hiveley, 61 F.3d 1358,

---

equivalent to 100 G of marihuana.  Provided, however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

U.S.S.G. § 2D1.1 Notes to Drug Quantity Table (1994).  Amendment 516 to the Sentencing Guidelines replaced the above paragraph with the following language: "In the case of an offense involving marihuana plants, treat each plant, regardless of sex, as equivalent to 100 G of marihuana."  U.S.S.G. § 2D1.1 Notes to Drug Quantity Table (1995).  Unfortunately for Betz, the effective date of Amendment 516 was November 1, 1995.  Because Betz's case was brought before that date, it is subject to the 1994 language.

1362 (8th Cir. 1995);  see also United States v. Sleet, 893 F.2d 947, 949 (8th Cir. 1990), and the district court's findings as to witness credibility are "'virtually unreviewable on appeal.'" United States v. Adipietro, 983 F.2d 1468, 1472 (8th Cir. 1993) (quoting United States v. Candie, 974 F.2d 61, 64 (8th Cir. 1992));

see also <u>United States</u> v. <u>Carter</u>, 997 F.2d 459, 461 (8th Cir. 1993). Thus, a defendant challenging a district court's determination of quantity faces "a difficult burden" on appeal. <u>United States</u> v. <u>Simmons</u>, 964 F.2d 763, 773 (8th Cir.), <u>cert. denied</u>, 506 U.S. 1011 (1992) (internal citation omitted); <u>see also</u> <u>United States</u> v. <u>Sales</u>, 25 F.3d 709, 711 (8th Cir. 1994) ("Defendants who challenge the sentencing court's determination of drug quantity face an uphill battle on appeal because we will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made.").

Betz challenges the government's theory that the use of chicken wire rings to protect the plants constituted a unique "signature" of growing marijuana that enabled the officers to identify marijuana grown by him. Evidence of Betz's "chicken wire signature" was put forth at the sentencing hearing by Officer Clark, who testified that he, along with Special Agent Smallwood and Officer Stevens of the Forest Service, identified a particular method of growing marijuana -- groups of three to five marijuana plants encircled by chicken wire rings. This particular method of growing marijuana was attributed to Betz when officers photographed Betz pruning marijuana in a patch of plants encircled with chicken wire rings. Officer Clark testified that other marijuana plants, not attributed to Betz, were found in different locations of the National Forest or were planted in a different way. The district court made specific findings crediting the testimony of Officer Clark as to Betz's "signature" of planting marijuana, stating:

> I am impressed by Mr. Clark, with his background, knowledge, and information, characterizing marijuana growing and identification as a signature. . . . The signature that Officer Clark attributed to the defendant was the fact that he had chicken wire around the various plants that were identified by the officers who investigated this problem.

-9-

Betz argues that the district court was clearly erroneous in attributing to him all the marijuana plants encircled with chicken wire found within a seven mile radius of his residence. Betz contends that using chicken wire to protect plants must be so commonplace that it cannot be a "signature." Apart from the chicken wire surrounding the plants, Betz argues that there was no other characteristic which differentiated any of the plants from any others. Throughout the patches, the number of plants in each chicken wire ring varied from one plant to 30 plants or more. Betz points to Officer Clark's testimony that the type of chicken wire varied between marijuana patches and that the stakes used to anchor the rings to the ground were sometimes wooden and sometimes metal.

We believe, in all the circumstances, that the chicken wire was a sufficient "signature" to warrant the attribution to Betz of the marijuana plants encircled by the wire. The officers testified that they identified similarities in the style of marijuana growing that allowed them to attribute plants grown with chicken wire to a single defendant. Betz was photographed in a patch of marijuana planted with chicken wire, was seen driving his motorcycle in the vicinity of other patches of plants with chicken wire, and admitted to growing marijuana in the National Forest over three years. Two rings of chicken wire were stored at his residence, which also contained marijuana leaves drying in a shed, $5,600 in admitted drug proceeds, and other indicia of a substantial marijuana-growing business. Betz admitted to having conducted such an operation in 1991-1993, with 1992 and 1993 -- the years the agents observed him -- being his best years. The systematic use of the wire throughout the area suggested that each enclosure was part of a single program rather than each patch being the haphazard product of a variety of different growers. While it was conceded there were others who grew marijuana in the National Forest, there was no evidence that the others were systematically cultivating marijuana on this scale

-11-

in this location and manner.  We therefore find no clear error in the district court's decision to attribute to Betz all the plants

encircled by chicken wire.  Cf. United States v. Rose, 8 F.3d 7, 9 (8th Cir. 1993) (holding that the district court was not clearly erroneous in attributing to the defendant 172 marijuana plants found in a plot in which the defendant had been photographed tending the plants).

Turning to the plants not encircled by wire, we also affirm the district court's determination.  Officer Clark testified that approximately 188 plants were attributed to Betz despite the fact that they were not planted within chicken wire enclosures: (1) 84 plants without chicken wire around them in 1993 but planted in patches where the officers determined there had been chicken wire in 1992; (2) 35 plants protected by an old garden fence rather than chicken wire; and (3) 69 unfenced plants found in a ditch.  The district court found as to the plants described in (1):

> [I]t appears, from one of the documents . . .  that some of the plants were counted that did not have chicken wire around them.  As I understood the testimony, that those particular plants were plants that were discovered in 1993 which had chicken wire around them in 1992, but did not have chicken wire around them in 1993.  So the conclusion of the officer was that it was still the same modus operandi, the same signature utilized when they had chicken wire around them one year, and perhaps did not have that wire around them the next year.  But there was sufficient direct evidence to show that at least at one time, those plants, which when counted did not have the wire, did at one time.

We accept the court's reasoning as to these some 84 plants found growing in 1993 in plots which in 1992 had had wire.  The indication of the use of wire in the earlier year was, we think, a sufficient signature.

We are left to consider the 35 plants protected by an old garden fence and the 69 plants found in a ditch.  While the wire signature was lacking, there was evidence that these plants were

found near the wire-encircled plants, and the officers who were on the scene concluded that these plants were attributable to the same

grower, Betz.  We are not persuaded the court was clearly erroneous in attributing these also to Betz.[2]

We affirm the court's attribution to Betz of all plants and household amounts included in the sentence calculation.

**B.    Section 2D1.1(b)(1) Enhancement**

Betz contends that the district court erred in adopting the Presentence Report's recommendation of a two-level enhancement in Betz's offense level pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines.  This court "'will not reverse the [d]istrict [c]ourt's conclusion that the weapon was connected to the offense unless it is clearly erroneous.'"  United States v. Britton, 68 F.3d 262, 265 (8th Cir. 1995) (citing United States v. Baker, 64 F.3d 439, 441 (8th Cir. 1995)); see also United States v. Hayes, 15 F.3d 125, 127 (8th Cir.), cert. denied, 114 S.Ct. 2718 (1994).

Section 2D1.1(b)(1) of the Sentencing Guidelines states: "If a dangerous weapon (including a firearm) was possessed, increase [base offense level] by 2 levels."  Application note 3 of the Commentary to § 2D1.1 provides in part:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons.  The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet.

_____

[2]The author, Judge Campbell, while otherwise in agreement, would hold that there is insufficient evidence to ascribe to Betz the 35 plants surrounded by the old garden fence and the 69 plants lying in the ditch.

U.S.S.G. § 2D1.1 comment (n.3) (emphasis added).  At sentencing, the burden is on the government to show by a preponderance of the

evidence that a dangerous weapon was present and that it was not clearly improbable that the weapon had a nexus with the criminal activity. United States v. Richmond, 37 F.3d 418, 419 (8th Cir. 1994), cert. denied, 115 S.Ct. 1163 (1995); United States v. McMurray, 34 F.3d 1405, 1416 (8th Cir. 1994), cert. denied, 115 S.Ct. 1164 (1995); United States v. Khang, 904 F.2d 1219, 1223 (8th Cir. 1990) ("Because of the aggravating nature of U.S.S.G. § 2D1.1(b)(1), because courts strictly construe penal statutes, and because of Congress' intent in developing the Guidelines and the Specific Offense Characteristics, the government must establish a relationship between a defendant's possession of the firearm and the offense which he or she has committed."). A firearm's mere presence is an insufficient predicate for § 2D1.1(b)(1) enhancement. See United States v. Shields, 44 F.3d 673, 674 (8th Cir. 1995) ("Although firearms were seized from appellant's residence, there was no evidence presented which would indicate the weapons were present during any illegal activity."); United States v. Turpin, 920 F.2d 1377, 1386 (8th Cir. 1990) ("Mere presence of the gun is not sufficient to justify sentence enhancement."), cert. denied, 499 U.S. 953 (1991).

It is undisputed that four firearms, along with drugs and proceeds from drug sales, were seized from Betz's residence during the execution of the search warrant: (1) a loaded Springfield 12 gauge pump action shotgun in a Volkswagen van on Betz's property; (2) a loaded Ruger .223 caliber semi-automatic rifle seized from the upstairs main bedroom closet; (3) a loaded Ruger .22 caliber pistol seized from the dining room; and (4) an unloaded Winchester .22 caliber single shot, bolt action rifle seized from the living room. Betz argues that the government failed to present evidence from which to infer, beyond mere presence, that the firearms had a

-17-

nexus to his drug activities.[3]  He argues that it is common for people living in rural areas to have firearms on their premises. Moreover, he points out that the firearms were not found in close proximity to large amounts of marijuana -- only 2.91 kilograms of marijuana were found at Betz's residence, and none of the weapons was found in the shed where the marijuana was located.

Nonetheless, even though the guns were not found in the shed with the marijuana, they were found on premises from which Betz conducted drug-related activities where they were readily accessible to Betz.  See Hiveley, 61 F.3d at 1362-63 (upholding enhancement where guns were seized from the defendant's home where he lived with his wife and two minor children, but were not specifically found in the trailer where the marijuana was found). Three of the guns were loaded and one had ammunition nearby, suggesting more than a run-of-the-mill state of readiness for immediate use.  As the district court observed, "people who are dealing in drugs frequently use dangerous weapons, or have possession of dangerous weapons, for the purposes of protecting their bounty."  This court has said that "firearms are tools of the [drug dealer's] trade."  Turpin, 920 F.2d at 1387 (internal citation omitted).  We agree with the district court that "[a]nyone who has marijuana in his home, as this defendant did, and who has admitted that he is growing . . . and cultivating marijuana in two

_____

[3]At oral argument, Betz contended that the Supreme Court's decision in Bailey v. United States, 116 S.Ct. 501 (1995), impacts the application of § 2D1.1(b)(1) because the Supreme Court construed the term "use" to require "active employment" of a weapon.  However, § 2D1.1(b)(1) requires enhancement if a dangerous weapon was "possessed."  The Supreme Court in Bailey suggested that § 2D1.1(b)(1) was an enhancement tool for dealing with those who "mix guns and drugs," but whose conduct does not fall within the meaning of § 924(c)(1) which requires that the defendant use or carry the weapon in the commission of the offense. Id. at 509. Thus, Bailey does not control in the present situation.

-18-

different sections in the Mark Twain National Forest, and who has over $6,000 [sic] of raw currency on his kitchen table, has

something to protect."  We find no error, clear or otherwise, in the district court's determination that, in all the circumstances, it was not clearly improbable that the firearms were connected to Betz's drug offense.[4]

We **affirm** in all respects the sentence imposed on Betz.

---

[4]Section 2D1.1(b)(1) enhancements have been upheld under a variety of circumstances.  See United States v. Early, 77 F.3d 242, 244 (8th Cir. 1996) (upholding enhancement when defendant showed a firearm during a drug sale even though defendant claimed he was trying to sell the firearm in a separate transaction); United States v. Kinshaw, 71 F.3d 268, 271 (8th Cir. 1995) (upholding enhancement when defendant had a gun belonging to another person in his apartment -- the defendant "need not have used the gun during the crime or have even touched it"); Britton, 68 F.3d at 264-65 (upholding enhancement for weapon seized eight months after narcotics sale when defendant had admitted that he had used pistol "during all of his transactions");  United States v. Cotton, 22 F.3d 182, 185 (8th Cir. 1994) (enhancement applied where gun and cocaine were found in room of defendant's daughter);  Hayes, 15 F.3d at 127 (upholding dangerous-weapon enhancement when firearms and drug paraphernalia were found in a locker over which defendant had control);  United States v. Pou, 953 F.2d 363, 371 (8th Cir.) (firearms seen in apartment from which cocaine was sold establishes sufficient connection between weapons and drug offenses to sustain § 2D1.1(b)(1) enhancement), cert. denied, 504 U.S. 926 (1992); United States v. Nash, 929 F.2d 356, 359 (8th Cir. 1991) (upholding enhancement when weapon was found in the luggage of defendant's girlfriend who was travelling with him); Turpin 920 F.2d at 1386-87 (enhancement applied where gun observed between co-defendants seated in car from which drugs had been sold);  United States v. Jones, 875 F.2d 674, 676 (8th Cir.) (upholding enhancement where firearms "were located in close proximity to the drugs"), cert. denied, 493 U.S. 862 (1989).  Cf. United States v. Bost, 968 F.2d 729, 733 (8th Cir. 1992) (reversing § 2D1.1(b)(1) enhancement where weapons were seized two and one-half months after commission of the charged acts and when the search warrant was executed and the weapons were found, no drugs were found).

A true copy.

Attest:

      CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT