# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1036

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jermaine Harris, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 11, 2002
Filed: October 31, 2002

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Jermaine Harris was indicted after a search of his home revealed a weapon, ammunition, and drugs. He pled guilty to the weapons charges and was convicted by a jury of distribution and possession of cocaine base and of conspiracy to distribute and possess with intent to distribute more than fifty grams of a mix containing cocaine base. Harris appeals and argues that the district court[1] erred in its evidentiary rulings and instructions to the jury, that the government presented perjured testimony,

_____

[1]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa.

that the evidence at trial was insufficient for conviction, that the court erred by enhancing his sentence for possession of a firearm, and that his trial counsel was ineffective.  We affirm.

I.

After Harris sold some crack cocaine to an informant who was fitted with a recording device, police executed a search warrant at the house in which he lived.  In his upstairs bedroom they found a police scanner, $1190 in cash, drug notes and small plastic bags, an unregistered short barreled .410 gauge shotgun, and a box of .45 caliber ammunition and a loaded magazine.  In a bathroom down the hall they found 0.86 grams of crack hidden in the toilet bowl.  Harris was the only person in the upstairs area at the time of the search.

Harris was indicted for distribution of cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(C);  possession with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1), (b)(1)(C);  conspiracy to distribute and possess with intent to distribute a cocaine base mixture weighing fifty grams or more, 21 U.S.C. § 841(a)(1), (b)(1)(A), 846;  possession of an unregistered short barreled shotgun, 26 U.S.C. §§ 5841, 5861(d), 5871;  and possession of a firearm by a felon.  18 U.S.C. § 922(g)(2).

His attorney hoped to succeed in excluding evidence related to the shotgun and ammunition at any jury trial and recommended that Harris plead guilty to the weapons charges.  Harris subsequently pled guilty to possession of an unregistered short barreled shotgun and to felon in possession of a firearm, and he acknowledged at the plea hearing that he had possessed the shotgun and the forty one rounds of .45 caliber ammunition found in his room.

At trial the government presented a number of witnesses who testified that they had been involved with Harris in drug distribution.  Most of them had been convicted

of drug related crimes and had reached plea agreements with the government. Robert Watkins testified that he sold Harris a total of seven ounces of crack on three occasions. Watkins also testified that he had reserved a special pager code for customers who purchased significant amounts and that Harris was among them and had mentioned that he had an additional supplier in Iowa City. The notes found in Harris' bedroom contained Watkins' phone number and one of his nicknames ("The Brain").

Wallace Maxwell and Robert Lewis, who both sold drugs with Watkins, corroborated his testimony that Harris had purchased crack from him. They testified that Harris had another cocaine source in the Davenport area whom Lewis identified as "Atticus" and whose name and phone number were contained in the notes found in Harris' bedroom. Maxwell testified that he once traveled with Harris to Davenport, where Harris purchased at least 1½ ounces of crack from Atticus. Harris' former girlfriend, Juanita Heald Perkins, testified that she had also accompanied him to Davenport to buy crack and confirmed that he knew Atticus. Maxwell testified that Harris once showed him three handguns when he visited his bedroom. Maxwell said that he saw .45 caliber, .32 caliber, and .25 caliber guns in Harris' bedroom and that Harris referred to the .45 caliber as "my baby" and refused to let him touch it. Maxwell later acquired the .32 caliber pistol from Harris.

Several other witnesses, including the government informant, testified that they had also purchased crack from Harris on a number of occasions. Shaune Hull testified that he bought crack for resale from Harris on six or seven occasions in early 1997, with at least one transaction occurring in Harris' bedroom. The drugs were frequently packaged in plastic bags. Hull was arrested with the phone number to Harris' house on a piece of paper in his pocket. An audiotape of the informant's transaction was introduced, and during the transaction the informant called the seller "Jermaine" several times.

Harris called a number of witnesses, including family members, fellow employees, and a former girlfriend. They testified that they had never seen him with drugs or guns and did not believe that he sold controlled substances. Several testified that it was not his handwriting on the notes found in his bedroom and that the room was frequently used by other family members. Several denied that the seller's voice on the audiotape was his. Harris' sister testified that she sold crack and frequently used her brother's bedroom to package it and that the only gun she had seen him with was the shotgun, which she claimed was only a decorative antique.

The case was submitted to the jury with a special interrogatory. The jury was instructed to answer this question in the event it found Harris guilty of conspiracy:

> What quantity of a mixture or substance containing crack cocaine do you find that Jermaine Harris knowingly combined, conspired, confederated and agreed with other persons to distribute and/or possess with intent to distribute?

(emphasis in original). The form supplied with the interrogatory provided the jury with three options: less than five grams, more than five but less than fifty grams, and fifty or more grams. The jury found Harris guilty of distribution of crack cocaine as well as conspiracy to distribute and possess with intent to distribute and then found that Harris had conspired to distribute fifty or more grams. On the third count, possession with intent to distribute, the jury found Harris guilty of the lesser included offense of possession of crack cocaine.

Harris moved for judgment of acquittal and for a new trial, arguing insufficient evidence and errors in instructing the jury and in admitting evidence of the shotgun and the ammunition. After this motion was denied, Harris obtained new counsel and sought to amend his original motion for new trial, filed a second new trial motion, and moved in arrest of judgment. He also sought to withdraw his guilty plea to the two weapons charges. He renewed his earlier arguments and in addition claimed that the

government had made knowing use of perjured testimony at trial and that he had received ineffective assistance of counsel in respect to his decision to plead guilty. After the court held an evidentiary hearing on the claims of perjured testimony and ineffective assistance, it denied all the post trial motions.

At sentencing the court found Harris accountable for more than 150 but less than 500 grams of crack and calculated his base offense level at 34.[2] See United States Sentencing Commission, Guidelines Manual, § 2D1.1(c)(1) (Nov. 2001). It then imposed a two level increase for possession of a firearm. See § 2D1.1(b)(1), for an adjusted offense level of 36. This, combined with a high criminal history category of V based on Harris' prior record, resulted in a sentencing range of 292 to 365 months. The court sentenced Harris to 292 months on the conspiracy charge, at the lowest point of his guidelines range. He also received concurrent sentences of 240 months for distribution of cocaine base, 120 months for felon in possession, 240 months for possession of a short barreled shotgun,[3] and 12 months for possession of cocaine base.

## II.

On his appeal Harris raises a number of arguments in respect to the district court's rulings at trial and on the post trial motions.

---

[2]There was evidence at trial indicating that Harris had been involved with at least 8½ ounces of crack, or approximately 240.97 grams.

[3]The statutory maximum on this charge is 120 months, 26 U.S.C. § 5871, and the government acknowledges that Harris received a 240 month sentence through "a clerical error." The parties should ask the district court to correct this clerical error and to communicate the correction to the Bureau of Prisons.

First, he argues that evidence regarding weapons should not have been admitted. This evidence included the shotgun and ammunition found during the search of his bedroom, as well as testimony by Wallace Maxwell that he had seen Harris with three handguns. Harris argues that the weapons evidence was inadmissible under Fed. R. Evid. 404(b) as other crimes evidence which was substantially more prejudicial than probative. Weapons have been recognized to be a tool frequently used to safeguard and facilitate drug transactions, United States v. Matra, 841 F.2d 837, 842 (8th Cir. 1988), however, and the evidence has sufficient probative value in this case to overcome any prejudicial effect. Moreover, evidence which merely indicates the "full context of the charged crime" is not governed by Rule 404(b). United States v. Carroll, 207 F.3d 465, 468 (8th Cir. 2000). The district court did not abuse its discretion in admitting this evidence. See United States v. Withorn, 204 F.3d 790, 794 (8th Cir. 2000) (standard of review).

Harris challenges the court's use of a special jury interrogatory on the quantity of drugs involved in the conspiracy. He contends that the jury should rather have been instructed that drug quantity is an additional element of the offense of conspiracy under 21 U.S.C. § 841(a)(1), (b)(1)(A), 846, requiring proof of involvement with more than fifty grams of a mix containing cocaine base. He relies on the holding in Jones v. United States, 526 U.S. 227, 243 n.6 (1999), that "any fact (other than a previous conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." The indictment here alleged that Harris conspired to distribute and possess with intent to distribute more than fifty grams of a mix containing crack cocaine. The court instructed the jury that the quantity of drugs which Harris conspired to distribute had to be proven "by the government . . . beyond a reasonable doubt." There was thus no error or abuse of discretion in the way in which the court instructed the jury or submitted the issues to it. Cf. United States v. Borders, 270 F.3d 1180, 1184 (8th Cir. 2001).

Harris claims that a number of trial witnesses committed perjury, an argument raised in his second motion for a new trial. He supported this argument with an affidavit of Marlin Knox, who said he was in a holding facility with Lewis, Hull, Maxwell, and Springfield while they waited to testify at trial and that they had a "lighthearted" attitude about it and discussed "tak[ing] down as many people as they could" in order to reduce their own sentences. Knox alleged that Maxwell had said "call me what you want just call me at home." Harris also submitted a letter from Maxwell claiming that the prosecutor had "played me all the way out. He even told me to say that shit about the gun." Following an investigation by the United States Attorney's office, Maxwell wrote a second letter stating that he had written the first in order to avoid a confrontation with Harris and other inmates.[4]

In order to obtain a new trial based on alleged use of perjured testimony, a defendant must prove that (1) the government's case included perjured testimony, (2) the government knew or should have known of the perjury, and (3) there was a reasonable likelihood that the false testimony could have affected the judgment of the jury. See United States v. Nelson, 970 F.2d 439, 443 (8th Cir. 1992).

The district court held an evidentiary hearing to examine the perjury charge. At the hearing, Knox admitted that the four witnesses had not said that they planned to testify falsely and Maxwell repeated the explanation he made in his second letter. The court found that Harris had failed to establish that there was perjured testimony at trial or that the government had known or should have known about it. The district court properly held an evidentiary hearing and was able to judge the credibility of the

---

[4]In support of the perjury charge Harris also cited a number of alleged inconsistencies in the testimony of government witnesses. The court acknowledged "inconsistencies and . . . post trial information that . . . could have been used for impeachment" at trial but found these insufficient to establish perjury. We agree with this finding, although Harris does not appear to challenge it on appeal.

witnesses, and its rulings have not been shown to be an abuse of its discretion. See Nelson, 970 F.2d at 443.

Harris contends that the evidence presented by the government was insufficient to convict him. A challenge to the sufficiency of the evidence is reviewed in the light most favorable to the verdict, allowing the prevailing party all reasonable inferences from the evidence. United States v. Butler, 238 F.3d 1001, 1003 (8th Cir. 2001). We may reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Calderin-Rodriguez, 244 F.3d 977, 983 (8th Cir. 2001). Harris argues that the government presented insufficient evidence that he possessed the crack found in the toilet since the bathroom was on the other side of the house from his bedroom, there was no evidence that he knew it was there, and others admitted having sold drugs in the house. The evidence showed that the crack was found in a bathroom while Harris was right down the hall and was the only person on the floor. There was considerable testimony that Harris bought and sold crack and had done so at least once in the bedroom where he was found. This evidence was sufficient for the jury to conclude that Harris possessed the crack. Harris also challenges the credibility of the government witnesses, including the informant and those testifying under plea agreements. Our review does not permit us to weigh the evidence or to assess the credibility of witnesses, however. United States v. Pardue, 983 F.3d 843, 847 (8th Cir. 1993). We conclude after studying the record that sufficient evidence was presented to support the convictions.

Harris argues that he received ineffective assistance from his counsel in the district court. He bases this on her recommendation that he plead guilty to the weapons charges and her representation of him at the change of plea hearing.[5] He also contends that she failed to recognize that he suffers from borderline mental

[5]He has not argued on appeal that the district court erred by denying him the opportunity to withdraw his pleas.

retardation and that this hampered her ability to advocate his case at trial effectively.[6] The district court held an evidentiary hearing to investigate the claim of ineffective assistance at the plea bargain stage; both Harris and his counsel testified. The court found that counsel's recommendation to plead on the weapons charges was a strategic choice and not ineffective assistance and commented that Harris "clearly had the intellectual prowess to fully appreciate the legal proceedings and understand what was going on and what was taking place." Harris did not claim before the district court that he had received ineffective assistance at trial.

An ineffective assistance of counsel claim should generally be raised in collateral post conviction proceedings under 28 U.S.C. § 2255 rather than on direct appeal. United States v. Whitefeather, 275 F.3d 741, 743 (8th Cir. 2002). That is because "normally such a claim cannot be advanced without the development of facts outside the original record." United States v. Dubray, 727 F.2d 771, 772 (8th Cir. 1984) (quoting United States v. Kazni, 576 F.2d 238, 242 (9th Cir. 1978)). The evidentiary hearing in the district court developed some additional facts related to the pretrial proceedings, but these may need to be seen in the larger perspective of the entire case now that the direct appeal from Harris' convictions has been concluded. Harris also seeks to raise claims of ineffective assistance at trial. For these reasons, his ineffective assistance claims are premature at this stage and should be raised in a § 2255 motion.

Finally, Harris challenges his sentence. He claims that the court erred by imposing a two level increase for possession of a firearm. Without this increase, his offense level would have been 34, resulting in a guidelines range of 235 to 293 months.

---

[6]Harris also alleges that his counsel's failure to recognize his limitations violated his rights under the Thirteenth, Fourteenth, and Fifteenth Amendments to the Constitution. This summary allegation has no legal merit.

The sentencing guidelines provide a two level increase in offense level for drug distribution crimes in which "a dangerous weapon (including a firearm) was possessed" by the defendant. USSG § 2D1.1(b)(1). The adjustment applies "if the weapon is present, unless it is clearly improbable that the weapon was connected with the offense." Id., comment. (n.3) The government has the burden to show by a preponderance of the evidence both that the weapon was possessed by the defendant and that it was not clearly improbable that the weapon was connected with the offense. United States v. Vaughn, 111 F.3d 610, 616 (8th Cir. 1997).

In a conspiracy case the government must also establish that the weapon was possessed by the defendant during the period of the conspiracy and that it was connected to the activity of the conspiracy. See United States v. Richmond, 37 F.3d 418 (8th Cir. 1994) (government must establish temporal and spatial connection between the weapon and the drug offense); United States v. Bost, 968 F.2d 729 (8th Cir. 1992) (enhancement not appropriate where defendant never seen in possession of weapons during the conspiracy and weapons found in location not connected to the drug transactions); United States v. Shields, 44 F.3d 673 (8th Cir. 1995).

Here the jury convicted Harris of Count V of the indictment which charged his knowing involvement in a conspiracy "between about 1996 and 1997" to distribute and possess with the intent to distribute more than 50 grams of cocaine base. The district court found that it was not clearly probable that the short barreled shotgun possessed by Harris was connected with his offense, but that the .45 caliber handgun Harris had in his bedroom and showed Maxwell in the fall of 1996 was. The court found by a preponderance of the evidence that Harris was in possession of such a gun and that it was clearly probable that it was connected with his offense of conspiracy. The court noted that ammunition and a magazine for a .45 caliber gun were seized on April 1, 1997 from Harris' bedroom, Harris pled guilty to possession of .45 ammunition, and Maxwell had previously seen the gun in the bedroom from which

most of the seized items were taken.[7] We review a sentencing enhancement under § 2D1.1(b)(1) for clear error. Vaughn, 111 F.3d at 616.

Harris argues that Maxwell did not mention the gun before the grand jury or in his proffer statement, but Maxwell testified at the evidentiary hearing that he had not been asked about Harris' involvement with guns until his pretrial interview. The weapon was observed in Harris' bedroom, a location from which at least one witness testified that Harris sold drugs. Ammunition for the gun was found in the same room, along with plastic bags, a scanner, and a large amount of currency. Cf. United States v. Pou, 953 F.2d 363, 371 (8th Cir. 1992) (connection present where firearms seen in the same apartment from which cocaine was distributed); United States v. Turpin, 920 F.2d 1377 (8th Cir. 1990) (enhancement appropriate where witness saw defendant with access to gun during the time period of the conspiracy in a vehicle from which drug transactions were conducted).

The district court based the enhancement on the evidence before it and its own credibility determinations. Harris admitted during his plea proceeding that he possessed forty one rounds of .45 caliber ammunition in April 1997, and Maxwell testified at trial that he had seen Harris in his bedroom with a .45 caliber handgun in fall 1996. There was evidence at trial that Harris was selling crack during 1996 and 1997, and cocaine base was found hidden in a toilet bowl down the hall from his bedroom on April 1, 1997. All of these events occurred during the time period of the conspiracy. Given the evidence in the record and the fact that weapons are "key tools in the drug trade," United States v. Dierling, 131 F.3d 722, 732 (8th Cir. 1997), the court did not err in finding that Harris possessed the .45 caliber gun and that it was not clearly improbable that the gun was connected with his offense.

---

[7]Maxwell was not the only witness who testified at trial that Harris possessed a .45 caliber handgun. Andre Alexander Springfield also testified that he had seen Harris with a .45 caliber gun in 1996.

III.

For these reasons we conclude that Harris is not entitled to either a new trial or to resentencing, and we affirm the judgment of the district court.

HEANEY, Circuit Judge, dissenting.

The district court added thirty months to the appellant's sentence on the basis that he possessed a firearm during the commission of the offense. The evidence established that Harris had the firearm several months before his drug sales, but not during them. Therefore, I cannot agree that the weapon was connected to the offense and I dissent from that portion of the majority's opinion that affirms the sentence enhancement.

As the majority correctly notes, a two-level enhancement for drug distribution crimes applies when "a dangerous weapon (including a firearm) was possessed" by the defendant. USSG § 2D1.1(b)(1). The adjustment is appropriate "if the weapon is present, unless it is clearly improbable that the weapon was connected with the offense." Id., comment. (n.3). Thus, the guideline clearly requires that before the enhancement is imposed, the government must establish that a weapon is at least present.

This circuit has consistently held that in order for § 2D1.1(b)(1) to apply, the government must prove by a preponderance of the evidence that a dangerous weapon was present *when the crimes were committed*, and that it was not clearly improbable that the weapon had some nexus with the criminal activity. See United States v. Shields, 44 F.3d 673, 674 (8th Cir. 1995) (holding enhancement not appropriate because firearms were seized from defendant's home thirty-seven days after last known drug sale occurred). See also United States v. Bost, 968 F.2d 729, 731-33 (8th Cir. 1992) (holding enhancement not appropriate because of two and one-half month

-12-

lapse between the criminal activity and the discovery of the weapons, and no evidence that weapons were present when defendant committed charged offense).

In this case, the district court did not find that any weapons present at the time of the charged crime were connected to the offense. Rather, the district court enhanced the appellant's sentence based on evidence that the appellant had possessed a handgun several months earlier. In doing so, the district court effectively disregarded Application Note 3 in the § 2D1 Official Commentary, and chose to interpret "possession" in a way that is counter to the official commentary and this circuit's case law. Without a firearm actually present at the time of the charged crime, the appellant's confession to possession of ammunition and the Maxwell testimony that he had seen a firearm seven months prior are irrelevant. At best, the evidence suggests that Harris possessed a handgun at one time, but it does not support the conclusion that Harris was currently in possession of a firearm, or that it was used in connection with criminal activity.[8] Unlike United States v. Turpin, 920 F.2d 1377 (8th Cir. 1990), where a witness observed the defendant in possession of a firearm while conducting a drug transaction, there is no evidence here that any weapons were ever used in connection with drug transactions, bringing this case more squarely in line with the facts of Bost.

The majority's extension of temporal possession is not supported by law. The best evidence the government provides to support the enhancement is that the appellant owned a gun six or seven months prior to his arrest. The majority

---

[8]The majority points to Count V of the indictment, alleging that Harris was involved in a conspiracy between about 1996 and 1997. The Maxwell testimony states that Harris was in possession of the .45 caliber handgun in the fall of 1996. To my mind, a thirty-month enhancement deserves a more exacting inquiry than vague generalities placing the two events around the same time. Two and one-half years should not simply be tagged onto a sentence because the conspiracy may have overlapped Harris's possession of the firearm.

constructively extends possession into the past, in direct conflict with Eighth Circuit precedent and the Sentencing Guidelines on their face. The Guidelines were not intended to open the door so wide as to allow any possession of any weapon at any time remotely proximate to a drug offense to be considered when enhancing a defendant's sentence. There is no evidence Harris ever used the weapon in conjunction with his drug sales. There was no weapon present at the time of his arrest. There is no reason this enhancement should apply to this case.

I do not believe the government has shown that USSG § 2D1.1(b)(1) applies. The two-level enhancement for possession of a firearm should not be applied to the appellant's sentence. I would therefore remand for resentencing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.