# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3182

_____

United States of America,

Plaintiff - Appellee,

v.

Michael Joseph Scott, also known as "Breeze", also known as "News",

Defendant - Appellant.

_____

No. 99-3330

_____

Appeals from the United States District Court for the District of Minnesota.

United States of America,

Plaintiff - Appellee,

v.

Terry Louis, also known as "T-Lou",

Defendant - Appellant.

_____

No. 00-1596
_____

United States of America,             *
                                       *
        Plaintiff - Appellee,          *
                                       *
        v.                             *
                                       *
William Gaynor Pearson, Jr., also      *
known as "Mad Bill", also known as     *
William Wright,                        *
                                       *
        Defendant - Appellant.         *

                                    _____

                          Submitted:  October 20, 2000

                          Filed:  March 23, 2001
                                    _____

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.
                                    _____

LOKEN, Circuit Judge.

        Members of a Los Angeles street gang known as the 132nd Street Shotgun Crips transported cocaine powder from California to the Twin Cities, where they cooked the powder into crack cocaine and distributed it. After a lengthy investigation that included wiretaps, seizure of 2,477 grams of cocaine powder from two couriers at the Twin Cities airport, and undercover purchases of 1,054 grams of crack cocaine, thirteen conspirators were indicted in July 1998. Nine pleaded guilty to the conspiracy charge, including leaders William Gaynor Pearson and Michael Joseph Scott. Terry Louis went

-2-

to trial and was convicted of conspiracy to distribute cocaine and use of a telephone to facilitate drug trafficking for his role in bringing one shipment of cocaine powder from California to Minnesota. The district court[1] sentenced Scott to 225 months in prison, Pearson to 210 months in prison, and Louis to 151 months in prison. Louis appeals his conviction, challenging the sufficiency of the evidence, the denial of a continuance, and the way in which wiretapped conversations were admitted into evidence. Louis also appeals the supervised release portion of his sentence. Pearson and Scott appeal their sentences, raising various sentencing issues. We affirm.

## I. Terry Louis

**A.** Louis first argues there was insufficient evidence to convict him of either participating in a drug trafficking conspiracy or illegal use of a telephone. We will overturn a jury verdict only if, taking the facts in the light most favorable to the verdict, no reasonable jury could have found the defendant guilty of the offense beyond a reasonable doubt. See United States v. Fregoso, 60 F.3d 1314, 1322 (8th Cir. 1995). "To be found guilty of conspiracy, a defendant must be shown to have knowingly entered into an agreement with at least one other person to violate the law." United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000).

Derrick Atkins was a conspiracy leader who recruited couriers in California to transport cocaine powder to the Twin Cities. Atkins pleaded guilty and appeared as a government witness at Louis's trial. Atkins testified that he recruited Louis and provided him with a kilogram of cocaine to transport from California to Minnesota on the night of April 1, 1998. After arriving in Minnesota, Louis stayed at a residence called "Detox" by the conspirators, waiting for Scott to pay the $1000 Louis earned for his courier services and coordinating his return to California with Atkins by telephone.

---

[1]The HONORABLE ANN D. MONTGOMERY, United States District Court Judge for the District of Minnesota.

Atkins's testimony was corroborated by intercepted phone calls in which conspiracy leaders discussed their attempts to find Louis at the Twin Cities airport, and by an April 5 telephone conversation between Louis and Atkins in which Louis stated, "business is handled, and I did my job." Further corroboration was provided by undercover agent Kenny Williams, who testified that he purchased crack cocaine from conspirator Carolyn Owens on other occasions, but on April 3 Owens said she could only sell him cocaine powder because the "boys just got in" and the powder had not yet been cooked into crack.

Atkins also testified to Louis's continuing involvement in the conspiracy. In May 1998, courier Lennard Graham was arrested at the Twin Cities airport with a shipment of cocaine powder from California. Graham contacted Louis, who notified Atkins of Graham's arrest. During this intercepted phone conversation, Louis said he switched phones "'cause I don't want everybody in our business." According to Atkins, Louis also volunteered to transport cocaine to Minnesota by car following Graham's arrest, assuring Atkins that he (Louis) would never "run off" with the drugs.

We conclude that Atkins's testimony, if believed by the jury, was sufficient evidence of Louis's knowing participation in at least one of the conspirators' drug trafficking transactions and of his use of the telephone to facilitate that transaction. On appeal, Louis emphasizes the lack of other evidence implicating him in the conspiracy and notes that Atkins testified as a government witness hoping to receive a downward sentencing departure. However, Atkins was thoroughly cross examined, and the issue of his credibility was for the jury. The jury chose to credit Atkins's testimony, which was corroborated by other evidence. Thus, substantial evidence supports the jury's verdict. See United States v. Maggard, 156 F.3d 843, 847 (8th Cir. 1998).

**B.** Louis next argues that the district court abused its discretion when it denied his motion for a continuance to obtain the attendance of a defense witness, California resident Brett Blackman. "Not the least of [a trial judge's] problems is that of

assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." Morris v. Slappy, 461 U.S. 1, 11 (1983). We will reverse a district court's denial of a continuance only if the court abused its discretion and the moving party was prejudiced by the denial. United States v. Cotroneo, 89 F.3d 510, 514 (8th Cir. 1996).

Though Blackman had previously spoken with defense counsel by telephone, the U.S. Marshals Service was unable to serve a subpoena on Blackman by the time the government rested its case. In support of a continuance until Blackman could be located, defense counsel advised the court that Blackman would impeach the credibility of Atkins, the only government witness who had directly implicated Louis in the conspiracy, by contradicting the following testimony by Atkins on cross examination:

Q. Brett's a friend and not a member of the conspiracy, isn't that true?

A. Yes.

Q. And Brett did pass some messages along for you from time to time, didn't he?

A. No.

Q. Isn't it true that you called Brett before you pleaded guilty and told him to tell your co-conspirators to plead guilty, too?

A. No.

Q. You absolutely didn't do that? Is that your testimony?

A. Yes.

While impeachment by contradiction is a well-recognized way of attacking a witness's credibility, contradiction offered through the testimony of another witness is

customarily excluded unless it is independently relevant or admissible. See MUELLER & KIRKPATRICK, MODERN EVIDENCE §§ 6.58, 6.62 (1995). As the Seventh Circuit stated in United States v. Kozinski, 16 F.3d 795, 806 (1994), "one may not contradict for the sake of contradiction" by proffering testimony that relates only to collateral matters. Here, the district court determined that Blackman's proffered testimony would have been excluded as relating to a collateral matter -- whether Atkins attempted to urge his fellow conspirators to plead guilty. We agree with that determination. Therefore, the court was well within its discretion in denying a continuance of indefinite duration while the defense attempted to obtain that testimony. See United States v. Calicutt, 598 F.2d 1120, 1121 (8th Cir. 1979).

**C.** During Atkins's testimony, the jury heard audio tapes of intercepted telephone conversations between members of the conspiracy discussing various aspects of their drug trafficking activities. Louis argues the district court erred in allowing Atkins to identify the speakers in these conversations and to interpret the slang and code words used by the conspirators. We disagree. A district court does not abuse its discretion in admitting testimony by a witness with firsthand knowledge as to his understanding of words used by the defendant or other conspirators. See Fregoso, 60 F.3d at 1326; United States v. Franklin, 747 F.2d 497, 498 (8th Cir. 1984). In this case, Atkins's leadership role in the conspiracy and his personal relationships with many conspirators, including Louis, gave Atkins firsthand knowledge of their slang and code words and the ability to identify the speakers in the intercepted telephone conversations.[2]

Louis further complains that Atkins was permitted to use transcripts of the conversations prepared by the government, while the jury followed along with a copy

---

[2]The court twice instructed Atkins that his testimony regarding the recorded conversations should be his own interpretation of what the words meant and not what someone else might understand them to mean.

-6-

of the transcripts. The district court repeatedly instructed the jury that the tapes and not the transcripts were evidence and that any discrepancies should be resolved in favor of what they heard on the tapes. This procedure was not an abuse of the court's substantial discretion. See United States v. Delpit, 94 F.3d 1134, 1147-48 (8th Cir. 1996); United States v. Britton, 68 F.3d 262, 264 (8th Cir. 1995); United States v. McMillan, 508 F.2d 101, 105-06 (8th Cir. 1974).

**D.** Finally, in a motion to supplement the appeal, Louis argues that his sentence of five years of supervised release exceeds the three-year maximum term authorized under 18 U.S.C. § 3583(b)(2), and that § 3583(b)(2) applies to his conviction under Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), because the jury did not make the drug quantity finding upon which his sentence was based. As this issue was not raised in the district court, we review for plain error.

In United States v. LeMay, 952 F.2d 995, 998 (8th Cir. 1991), we held that the maximum-term limitations in 18 U.S.C. § 3583(b) do not apply when a statute such as 21 U.S.C. § 841(b) expressly authorizes a longer term of supervised release. In United States v. Bongiorno, 139 F.3d 640, 640-41 (8th Cir. 1998), following LeMay, we upheld a six-year term of supervised release under § 841(b)(1), rather than the three-year maximum term under § 3583(b)(2). Thus, even if Apprendi applies to the supervised release portion of a sentence, there was no plain error under Apprendi in sentencing Louis to a term of supervised release that did not exceed the maximum term authorized under 21 U.S.C. § 841(b)(1)(C) ("at least 3 years"), the sentencing statute that applies in the absence of a specific drug quantity finding. See United States v. Aguayo-Delgado, 220 F.3d 926, 933-34 (8th Cir. 2000).

## II. William Pearson

Pearson and Atkins were conspiracy leaders responsible for the narcotics activities in California. Pearson's sole argument on appeal is that the district court

erred in finding that all of the drugs attributed to the conspiracy -- 1,054 grams of crack cocaine purchased by an undercover officer in the Twin Cities, and 2,477 grams of cocaine powder seized at the Twin Cities airport -- were reasonably foreseeable to Pearson as a California conspirator. "Before a quantity of drugs may be attributed to a particular defendant, the sentencing court is required to find by a preponderance of the evidence that the transaction or activity involving those drugs was in furtherance of the conspiracy and either known to that defendant or reasonably foreseeable to him." United States v. Brown, 148 F.3d 1003, 1008 (8th Cir. 1998); see United States v. Tauil-Hernandez, 88 F.3d 576, 579 (8th Cir. 1996).

This contention was waived because Pearson's plea agreement provided that the "base offense level applicable in this case based upon the quantities of cocaine and cocaine base ('crack') is Level 36," the base offense level used in determining his sentence. See United States v. Barrett, 173 F.3d 682, 684 (8th Cir. 1999); United States v. Durham, 963 F.2d 185, 187 (8th Cir.), cert. denied, 506 U.S. 1023 (1992). In any event, the contention is without merit. In sentencing Pearson, the district court stated that it had "heard the trial of the other defendants in this case" and found that the crack cocaine sales in Minnesota were reasonably foreseeable relevant conduct. The court was entitled to consider relevant evidence introduced at the trial of co-defendant Louis. See United States v. Fetlow, 21 F.3d 243, 250 (8th Cir. 1994). The testimony of Atkins at that trial amply demonstrated that the crack cocaine sales, as well as the cocaine powder seized at the Twin Cities airport, were reasonably foreseeable to Pearson as a leader of the conspiracy. The district court's drug quantity finding was not clearly erroneous.

### III.  Michael Scott

Scott stipulated in his plea agreement that he played a "leadership role" in a conspiracy comprised of five or more participants. After an evidentiary sentencing hearing, the district court found that Scott was a manager or supervisor of the

conspiracy and imposed a three-level upward adjustment under U.S.S.G. § 3B1.1(b). On appeal, Scott argues, as he did in the district court, that he was merely a low-level manager and therefore deserves a two-level adjustment. However, we have repeatedly held that the Guidelines do not authorize such a compromise adjustment -- if the criminal activity involved five or more participants, as Scott stipulated, § 3B1.1 permits either a four-level adjustment, a three-level adjustment, or no adjustment at all. See, e.g., United States v. Kirkeby, 11 F.3d 777, 778-79 (8th Cir. 1993).

FBI Agent Mento, the lead investigator of the conspiracy, testified at the sentencing hearing that Scott was "clearly the leader of the [gang] in Minnesota. He was running all the narcotics activities of the gang in Minnesota, he set prices for narcotics and directed the actions of numerous individuals in the conspiracy." This testimony was based upon numerous intercepted telephone conversations and Mento's extensive interviews and dealings with other conspirators. Mento's testimony was corroborated by the testimony of Atkins at Louis's trial. Thus, although Scott testified that he played a less significant role in the offense and argues that Mento's testimony was based upon unreliable information provided by conspirator Carolyn Owens, the district court's finding that he was a manager or supervisor is not clearly erroneous.

In a pro se supplemental brief, Scott raises additional sentencing issues. First, he argues that his counsel provided ineffective assistance at sentencing by failing to object to the testimony of Agent Mento and by failing to subpoena or require the government to produce Carolyn Owens for cross examination. As there is not an adequate record to permit us to consider these ineffective assistance claims on direct appeal, they must be raised in a post-conviction proceeding under 28 U.S.C. § 2255. See United States v. Jennings, 12 F.3d 836, 840 (8th Cir. 1994).

Second, Scott attacks the district court's drug quantity finding, asserting that the court relied on hearsay testimony of an unreliable witness (Owens), that the court double-counted quantities of powder and crack cocaine, and that the drugs were not

reasonably forseeable to him. Like Pearson, Scott waived these contentions by agreeing to a base offense level of 36 in his plea agreement, "based upon the quantities of cocaine and cocaine base ('crack')." In addition, he failed to object to the drug quantity finding at sentencing; as the facts summarized earlier in this opinion make clear, the drug quantity finding, which was based upon the crack cocaine sold to an undercover agent and the cocaine powder seized at the Twin Cities airport, was not plain error. See United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994) (standard of review).

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.