**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David LEONTI, Defendant–Appellant.**

No. 01–17113.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2002.

Filed April 24, 2003.

Karen Landau (argued), Alan Ellis, Peter Goldberger, Law Offices of Alan Ellis, Sausalito, CA, for the defendant-appellant.

Thomas Muehleck, Assistant U.S. Attorney, Honolulu, HI, for the plaintiff-appellee.

Before: COWEN,* HAWKINS, and W. FLETCHER, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge.

We confront an issue of first impression in this circuit: whether a viable ineffective assistance of counsel claim can arise in the sentencing context; specifically, whether failing to effectively assist a defendant awaiting sentencing in his willing efforts to provide cooperation to an interested government can constitute a Sixth Amendment violation. Concluding that the pre sentencing cooperation period is a critical stage of the criminal process and that obtaining a substantial assistance motion from the government represents a particularly critical point in that process, we reverse the district court's refusal to hold an evidentiary hearing on allegations which, if proven true, would make out such a claim.

### FACTS AND PROCEDURAL HISTORY

The nature of the district court dismissal leaves us a record consisting largely of Leonti's allegations which, for the purpose of our review, unless palpably incredible or patently frivolous, must be taken as true. *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984).

In late 1995, the DEA acquired information from a cooperating source that Leonti was the head of a group of individuals in San Jose, California who were sending methamphetamine disguised as computer software to individuals in Honolulu, Hawaii. On August 22, 1996, a federal grand jury indicted Leonti and two co-defendants for conspiracy to distribute and possess methamphetamine, and indicted Leonti for possession of methamphetamine with intent to distribute, interstate travel in aid of racketeering, and money laundering. Leonti was arrested in California, transferred to Hawaii, and then released on bond and required to reside with his mother in California on electronic monitoring.

Shortly after his arrest, Leonti was asked by DEA Agent Robin Dinlocker ("Dinlocker") whether he was interested in cooperating, and he told her that he needed to speak with an attorney. Leonti then retained California attorney Jerry Kaplan ("Kaplan"), who contracted with attorney Mark Zenger ("Zenger"), to act as local counsel in Hawaii. Leonti told Kaplan at the outset that he wished to cooperate in order to reduce his sentence, but Kaplan wanted to first review discovery. About one month after his indictment, Leonti told Kaplan that he had information regarding a major methamphetamine distributor in San Jose, as well as several other large-scale methamphetamine dealers, and that he was willing to arrange deals with them for the government. Kaplan, still wanting to wait until he had reviewed discovery, did not pass this information along to the government.

In January 1997, Kaplan completed his review of discovery and advised Leonti to plead guilty and begin cooperating with the federal government. Kaplan arranged

---

* Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

a proffer session with the government in Hawaii, but failed to appear at this meeting, although local counsel Zenger did attend. Dinlocker and several IRS agents were present at the proffer session, at which Leonti provided information about methamphetamine trafficking and his relationship with a major trafficker. Zenger describes the agents as being "interested and excited about what Mr. Leonti had to say and what he could do for them." Zenger also stated that Dinlocker indicated she would put Leonti in contact with an agent in San Jose who would assist Leonti "in the effort to arrange a deal with one particular target."

On April 21, 1997, Leonti pled guilty pursuant to a plea agreement with the government wherein he agreed to cooperate in exchange for a governmental motion for downward departure pursuant to U.S.S.G. § 5K1.1, in the event that he was able to provide substantial assistance. Kaplan was scheduled to appear at the plea hearing, but did not appear, although, again, Zenger was present.

At the plea hearing, Assistant U.S. Attorney Muehleck ("Muehleck") told the judge that Leonti was cooperating and had "been debriefed on a couple of occasions," and said that he was "optimistic" that the government would benefit from Leonti's cooperation. For these reasons, Muehleck asked the judge to go "outside" the applicable statute and release Leonti on bail so that he could continue to cooperate. When the judge expressed skepticism about making an exception, Muehleck further said that the request was not made lightly, and that Leonti had already "provided substantial information." Although Muehleck said he could not "tell the court that [he knew he was] going to get something out of it," he reiterated that he was "optimistic."

Later that month, Leonti met with DEA Agent Gilblanco ("Gilblanco"), who was based in San Jose. Kaplan did not attend this meeting, and, because it took place on the mainland, neither did Zenger. Gilblanco expressed some reluctance about working with Leonti, and said he was only doing it as a favor to Dinlocker. Leonti told Gilblanco that he was concerned about arranging deals because of the ankle bracelet he was wearing for home monitoring; if anyone patted him down they would know he was subject to monitoring and was possibly cooperating with the government. Gilblanco was unwilling to help him have the bracelet removed, and disagreed with Leonti about the strategy for making the first deal. Gilblanco wanted to start off with a five-pound sale, but Leonti thought that suggesting such a large amount would be suspicious.

Leonti talked to Kaplan about these problems, but although Kaplan expressed concern, he never attempted to contact Gilblanco or work things out. Leonti did not hear anything from Gilblanco or Kaplan for one to two months, although he attempted to contact both of them. During this period, Leonti discussed his concerns about Kaplan's representation with Zenger, who revealed that he too had unsuccessfully tried to contact Kaplan on numerous occasions.

When nothing came of Leonti's relationship with Gilblanco, Dinlocker introduced Leonti to California Bureau of Narcotics Agent Castillo ("Castillo"), with whom Leonti then worked from August 1997 to March 1998. During this time, Leonti succeeded in arranging a one to two pound methamphetamine deal with drug trafficker Raul Martinez ("Martinez"), but the deal ultimately failed because Castillo could not raise enough money to consummate it. In addition, Castillo also failed to respond to Leonti's concerns about his ankle bracelet, and Martinez found out about the bracelet and asked about it. Leonti

again asked Kaplan to intercede, but Kaplan did not take any action.

When Leonti complained to Kaplan about his failure to facilitate cooperation, he was told not to worry because Muehleck was going to call Leonti to testify before a grand jury, which would be sufficient to constitute substantial assistance. However, the government never called Leonti before the grand jury. Leonti repeatedly asked Kaplan to tell Muehleck of his desire to testify, but Kaplan never contacted Muehleck. Kaplan's assurances led to Leonti's failure to maintain contact with any government agents between April 1998 and July 1999.

In May, 1999, Kaplan told Leonti that he was to be sentenced and would receive no downward departure for substantial assistance. The next month, Leonti contacted Castillo because Martinez was still trying to sell him methamphetamine, but Castillo was "unable to make the arrangements necessary."

Leonti was sentenced on July 12, 1999. The government did not recommend that he receive a downward departure for substantial assistance, and the district court sentenced Leonti to 262 months imprisonment. On July 19, 2000, Leonti filed a 28 U.S.C. § 2255 petition, alleging ineffective assistance of counsel. The district court denied the motion without an evidentiary hearing, and issued a certificate of appealability.

## DISCUSSION

Leonti now seeks an evidentiary hearing as to whether Kaplan rendered ineffective assistance by delaying Leonti's guilty plea and failing to effectively assist him during his period of cooperation. An inmate filing a claim for federal habeas relief under 28 U.S.C. § 2255 is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* We have characterized this standard as requiring an evidentiary hearing where "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *Schaflander*, 743 F.2d at 717. Thus, the district court's decision that Leonti's ineffective assistance claim did not warrant an evidentiary hearing was correct if his allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Id.* We review a denial of an evidentiary hearing for abuse of discretion. *United States v. Blaylock*, 20 F.3d 1458, 1464 (9th Cir.1994).

## I. Applicability of the Sixth Amendment

Leonti's ineffective assistance claim arises out of his counsel's conduct during the process of reaching the plea agreement and Leonti's subsequent attempts to cooperate with the government. Leonti states a claim for relief only if the Sixth Amendment guarantees apply to these aspects of a criminal proceeding.

Once it attaches, the right to counsel under the Sixth Amendment applies to all "critical stage[s] of the prosecution." *Kirby v. Illinois*, 406 U.S. 682, 690, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (internal quotation marks omitted and emphasis removed); *accord United States v. Akins*, 276 F.3d 1141, 1146 (9th Cir.2002) (internal quotation marks omitted and emphasis removed). Because defendants are entitled to competent counsel "at every stage of a criminal proceeding where substantial rights ... may be affected," *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); *accord United States v. Ant*, 882 F.2d 1389, 1393 (9th Cir.1989),

the right to counsel also applies at critical stages of the sentencing phase in a criminal prosecution. *Mempa*, 389 U.S. at 134, 88 S.Ct. 254.

██ A critical stage is a "trial-like confrontation, in which potential substantial prejudice to the defendant's rights inheres and in which counsel may help avoid that prejudice." *Beaty v. Stewart*, 303 F.3d 975, 991–92 (9th Cir.2002) (internal citations, quotation marks, and alterations omitted). Critical stages include, for example, post-indictment police lineups, *United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), arraignments, *Hamilton v. Alabama*, 368 U.S. 52, 53, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and sentencing, *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).

██ Thus, the essence of a "critical stage" is not its formal resemblance to a trial, but the adversary nature of the proceeding, combined with the possibility that a defendant will be prejudiced in some significant way by the absence of counsel. *See, e.g., Wade*, 388 U.S. at 228–29, 87 S.Ct. 1926 (police lineup constitutes critical stage because of "innumerable dangers," including possibility of improper suggestion and likelihood that the issue of identity will be conclusively determined there); *Beaty*, 303 F.3d at 992 (group psychiatric treatment sessions did not constitute critical stage because not court-ordered or designed to acquire information to be used at trial).

## A. The Late Plea

██ The plea proceeding is a critical stage. *See United States v. Fuller*, 941 F.2d 993, 995 (9th Cir.1991); *Akins*, 276 F.3d at 1146. We have therefore found ineffective assistance of counsel in cases where an attorney's failures concerned the process of plea bargaining and reaching the plea agreement. In *United States v. Blaylock*, we held that the failure to communicate a plea offer to a defendant is ineffective assistance. 20 F.3d at 1465–66; *see also United States v. Rivera–Sanchez*, 222 F.3d 1057, 1060–61 (9th Cir.2000) (holding that counsel is required to communicate the terms of a plea offer to a defendant, and to ensure that the defendant understands the terms of the offer and its significance).

██ Leonti was also entitled to the effective assistance of counsel in his decision whether and when to plead guilty. If it is ineffective assistance to fail to inform a client of a plea bargain, it is equally ineffective to fail to advise a client to enter a plea bargain when it is clearly in the client's best interest. *See Boria v. Keane*, 99 F.3d 492, 497 (2d Cir.1996) (examining counsel's failure to advise client of wisdom of accepting a plea). Therefore, Leonti will state a claim under the Sixth Amendment if Kaplan's conduct in delaying Leonti's plea was "outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## B. The Period of Attempted Cooperation

The focused question presented here is whether an ineffective assistance claim can arise out of an attorney's failure to properly assist a defendant in cooperating with the government. We conclude that the profound effect a substantial assistance motion can have on a defendant's sentence qualifies the cooperation period as a "critical stage" of the criminal process.

Cooperating with the government has become a crucial aspect of plea bargaining and sentencing under the Federal Sentencing Guidelines. The importance of plea bargaining to the modern criminal process

is well-documented, and has been long recognized by the Supreme Court. *See Blackledge v. Allison*, 431 U.S. 63, 71, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); George Fisher, *Plea Bargaining's Triumph*, 109 Yale L.J. 857 (2000). Because 85% of federal criminal cases are resolved by plea,[1] it is not surprising that sentencing has become the effective focus of a defendant's efforts to secure a favorable outcome. In this regard, many defendants attempt to cooperate with the government in hopes of persuading the government to file a "substantial assistance" motion. Obtaining such a motion is critical to a defendant's hope of a reduced sentence. With it, the sentencing judge may depart from the guidelines and reduce the defendant's sentence in an amount reflecting, *inter alia*, the nature, extent, and usefulness of the defendant's assistance. *See* U.S.S.G. § 5K1.1.

Without it, a defendant has little hope of obtaining a reduced sentence. Apart from substantial assistance to the government, the alternative bases for downward departure from the prescribed guideline range are largely limited to specific factual circumstances. *See, e.g., id.* § 3B1.2 (minimal or minor participant in the crime); *id.* § 3E1.1 (acceptance of responsibility); *id.* § 5K2.12 (coercion and duress). For defendants whose cases do not fit within these narrow parameters, cooperating with the government becomes their only recourse for attempting to secure a downward departure. Thus, for many federal defendants, such as Leonti, the only hope of mitigating the often harsh effects of the sentencing guidelines is cooperation with the government.

■ Not only is cooperation essential to the interests of defendants facing sentencing, it serves the government's interests by allowing it to command the services of so many defendants with information or connections that are valuable for law enforcement purposes. Given the symbiotic nature of the relationship, it is not surprising that defendants' attempts to cooperate have become such a central part of criminal procedure. We now acknowledge that reality by recognizing attempted cooperation as a critical stage of the proceeding. As substantial assistance has become the last, best hope of so many defendants, the guarantee of competent counsel must apply to the process of seeking such a recommendation.[2]

■ It is also apparent, however, that advice about whether and when to cooperate does not exhaust the potential benefits of competent counsel during this period. As *Strickland* recognized, a lawyer has many and varied duties to a client. 466 U.S. at 688–90, 104 S.Ct. 2052. In addition to keeping the client informed and consult-

---

1. Admin. Office of the U.S. Courts, Judicial Business of the U.S. Courts: Annual Report of the Director 95 (2002).

2. At least one district court has recognized the importance of substantial assistance under the Guidelines. *United States v. Fernandez*, 2000 WL 534449 (S.D.N.Y.), found ineffective assistance where an attorney failed to advise a defendant of the importance of cooperating with the government early in the case. *Id.* at *2. In addressing this claim, the court emphasized the centrality of cooperation under the Guidelines regime, as follows:

Anyone who has practiced as a criminal defense lawyer in federal cases since the effective date of the Guidelines knows the importance of a 5K1.1 letter. . . .
[T]he advent of the Sentencing Guidelines now makes it mandatory that every defendant be advised at an early stage that cooperation with the Government may be the only course that can substantially reduce the sentence that will ultimately be imposed.
*Id.* at *3, *6.

ing with the client on important decisions, an attorney generally has a duty "to bring to bear such skill and knowledge" as will render the adversarial process reliable. *Id.* Leonti's allegations, as well as common sense, suggest that an attorney's assistance is critical to the cooperation process in a number of respects, including, but not limited to, facilitating communication between the defendant and the government, attending proffer sessions, ascertaining the government's expectations and whether the defendant is satisfying them, communicating the client's limitations to the government, and establishing a record of attempts to cooperate.

■ Of course, a downward departure for substantial assistance is never guaranteed, as the government may rightfully decline to file a substantial assistance motion for any reason, so long as its decision is not arbitrary, based on an unconstitutional motive, or made in bad faith. *United States v. Quach,* 302 F.3d 1096, 1103 n. 3 (9th Cir.2002); *United States v. Murphy,* 65 F.3d 758, 762 (9th Cir.1995). However, such a departure is assuredly impossible to obtain without successful cooperation.

The nature of substantial assistance under the Sentencing Guidelines distinguishes the period of attempted cooperation from the "presentence interview," which we have held is not a critical stage. *Baumann v. United States,* 692 F.2d 565, 578 (9th Cir.1982). In *Baumann,* we based our holding primarily on the "wide discretion" possessed by district judges in determining the appropriate sentence. *Id.* at 578. Because the district judge was entitled to consider all relevant facts, including those inadmissible at trial, and was "not required to impose the maximum sentence or even the recommended sentence," that Baumann was denied the advice of his attorney in deciding whether to submit to

a presentence interview was "constitutionally insignificant." *Id.*

■ We later extended that holding to the Guidelines era of mandatory sentencing. *United States v. Benlian,* 63 F.3d 824, 827 (9th Cir.1995). In doing so, we adopted the holdings of the other circuits to consider the question and implicitly endorsed their reasoning. *See id.* at 827–28 (citing *United States v. Washington,* 11 F.3d 1510, 1517 (10th Cir.1993); *United States v. Bounds,* 985 F.2d 188, 194 (5th Cir.1993); *United States v. Tisdale,* 952 F.2d 934, 940 (6th Cir.1992); *United States v. Johnson,* 935 F.2d 47, 50 (4th Cir.1991); *United States v. Jackson,* 886 F.2d 838, 844–45 (7th Cir.1989)). Rather than the discretionary nature of sentencing, these circuits focused primarily on the non-adversarial nature of a presentence interview, which is commonly conducted by a probation officer. In *United States v. Gordon,* 4 F.3d 1567 (10th Cir.1993), the Tenth Circuit noted that the right to counsel attaches "only at 'critical stages of the *prosecution.*'" *Id.* at 1571 (quoting *Kirby,* 406 U.S. at 690, 92 S.Ct. 1877) (emphasis in original). Because the probation officer "is not an agent of the prosecution[,] ... has no adversarial role in the sentencing proceedings[,] ... [and] acts as a neutral information gatherer for the judge," the right to counsel does not attach. *Id.* at 1571–72; *see also Tisdale,* 952 F.2d at 939–40 (holding that because the probation officer "does not act on behalf of the prosecution," a presentence interview is not a critical stage); *Jackson,* 886 F.2d at 844("A federal probation officer is an extension of the court and not an agent of the government."); *Brown v. Butler,* 811 F.2d 938, 941 (5th Cir.1987) (holding that there is no right to counsel at a presentence interview because the probation officer is "an arm of the court charged with

assisting the court in arriving at a fair sentence").

By contrast, a defendant's attempts to cooperate are conducted by and at the near-complete discretion of the prosecution itself. While the process is not strictly adversarial in nature, the government is not transformed into a neutral and impartial "arm of the court" simply because it is seeking information from the defendant. While seeking his assistance, the government continues to simultaneously seek the imposition of a sentence for his crime, in this case one of over 20 years imprisonment. In this way, a defendant's presentence cooperation is somewhat similar to police interrogation. Any speculative benefits he may receive from providing information do not change the essentially adversarial nature of the encounter.

In addition to the discretionary nature of pre-Guidelines sentencing, our decision in *Baumann* pointed to the "routine" nature of the encounter in denying Sixth Amendment protection to presentence interviews. *Baumann,* 692 F.2d at 578. We held that a routine presentence interview in a non-capital case "does not involve an issue which is nearly as critical" as the psychiatric interview to determine future dangerousness in a capital case, held to be a critical stage in *Estelle v. Smith,* 451 U.S. 454, 471, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). By contrast, as we have discussed, attempts to cooperate are critical to sentencing under the Guidelines, and, far from being routine, are marked by significant uncertainty and the accompanying possibilities for prejudice to the defendant's interests. Because the period of cooperation is an adversarial confrontation "in which potential substantial prejudice to the defendant's rights inheres and in which counsel may help avoid that prejudice," it is a critical stage of a criminal proceeding.

*See Beaty,* 303 F.3d at 991–92 (internal quotation marks omitted).

## II. The *Strickland* Claim

■ Because the plea process and period of cooperation are critical stages of a criminal proceeding, Leonti was guaranteed the effective assistance of counsel. *See Kirby,* 406 U.S. at 689–90, 92 S.Ct. 1877. Leonti claims he was deprived of this right because Kaplan, his attorney, failed to properly advise him to plead guilty at the appropriate time, and failed to properly manage Leonti's attempts at cooperating with the government. To prevail on his ineffective assistance claim, Leonti must show that (1) his attorney's performance was unreasonable under prevailing professional standards, and (2) there is a "reasonable probability that but for counsel's unprofessional errors, the result would have been different." *Strickland,* 466 U.S. at 687–91, 694, 104 S.Ct. 2052. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

### A. The Late Plea

First, Leonti alleges that Kaplan rendered ineffective assistance by failing to advise him to plead guilty immediately after his arrest. Leonti claims that he was ready and willing to cooperate at this point, and that Kaplan's failure to assist him in doing so prejudiced him.

■ Even if the facts alleged by Leonti are true, Kaplan's conduct in this regard did not constitute ineffective assistance. Kaplan's reason for advising Leonti that he should not cooperate immediately, which he repeatedly stated to Leonti and which Leonti does not dispute, was that Kaplan wanted to review the discovery in the case before entering into a plea agreement. That decision was tactical, *see id.* at

689, 104 S.Ct. 2052, and cannot be called unreasonable. The American Bar Association standards advise defense attorneys that "[u]nder no circumstances should a lawyer recommend to a defendant acceptance of a plea unless a full investigation and study of the case has been completed, including an analysis of controlling law and the evidence likely to be introduced at trial." ABA Standards for Criminal Justice 4–6.1(b).

Further, Leonti cannot show prejudice from this decision. While Leonti emphasizes the importance of pleading early for garnering substantial assistance departures, those advantages only accrue to defendants who are cooperating against other co-defendants accused of the same criminal enterprise. In those cases, pleading early is an advantage because if a defendant waits too long, he will be left with no one against whom he can provide evidence. *See Fernandez,* 2000 WL 534449, *3–*4. However, Leonti had been identified as the leader of the smuggling ring, so the government would likely not have been interested in Leonti's testimony against his co-defendants. The advantages of early cooperation are much less certain in a case, such as Leonti's, where a defendant seeks to cooperate against other unindicted individuals who are unaware of his impending cooperation. If Leonti had pled earlier, he would have been faced with the same barriers to cooperation that plagued him later on. Therefore, there is not a reasonable probability that an early plea would have garnered him a substantial assistance motion and a lighter sentence.

### B. The Period of Attempted Cooperation

Leonti's allegations concerning Kaplan's conduct following the guilty plea are much more troubling. Leonti claims to have received little to no assistance from Kaplan during the period he was attempting to render substantial assistance to the government. The standard for granting an evidentiary hearing entails assuming the truth of Leonti's factual allegations, *Schaflander,* 743 F.2d at 716, and the facts alleged by Leonti show that Kaplan made no attempt to ascertain what the government wanted from Leonti, or how his cooperation might be carried out. Kaplan failed to appear at the proffer and debriefing sessions, and even failed to discuss the content of these sessions with Zenger or his client. More significantly, Kaplan failed to respond to Leonti's serious concerns regarding his inability to cooperate. When Leonti discovered limitations on his cooperation through discussions with federal agents, the record as presented by Leonti shows that Kaplan did nothing to try to facilitate the process. Not only did Kaplan fail to communicate with the federal agents or with the AUSA, he failed to communicate with his client to advise him of the appropriate course to maximize his chances for providing substantial assistance to the government.

Further, when Leonti expressed his frustration to Kaplan after a year had gone by with none of his efforts to cooperate coming to fruition, Kaplan told Leonti "not to worry" about his problems, because Muehleck had told Kaplan that Leonti would be called to testify at the grand jury. This never materialized, and the facts alleged by Leonti show that Kaplan never followed up with Muehleck, never tried to ascertain why Leonti was not called, or if he would be called in the future. In short, Kaplan never did *anything* to make it more likely that Leonti would in fact be able to provide substantial assistance. If Leonti's allegations are true, Kaplan "was not functioning as the

'counsel' guaranteed ... by the Sixth Amendment" during Leonti's period of co-operation. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

An evidentiary hearing is required to resolve numerous factual issues upon which Leonti's ineffective assistance claim depends. There is insufficient evidence in the record to determine, for example, whether Kaplan's decision to fail to pursue a modification of Leonti's conditions of release that would allow him to remove his ankle bracelet was tactical, the extent to which Kaplan was unavailable during Leonti's cooperation, or whether Leonti's lack of cooperation resulted from his unwillingness to cooperate with the government's standard practices.

 Should the hearing provide evidence that a drug deal could have been arranged with Kaplan's competent assistance, there is ample reason to think that the government would have recommended a downward departure, given its demonstrated interest in Leonti's information. The government took the unusual step of requesting that Leonti remain out on bail, so that he could be allowed to cooperate. Further, in making this request, Muehleck commented that Leonti had already provided "substantial information." While the government has wide discretion in filing a substantial assistance motion, and the court has discretion in choosing to depart downward, to show prejudice Leonti need only show "a probability sufficient to undermine confidence in the outcome" that he could have received a downward departure for substantial assistance had Kaplan served as competent counsel. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The idea that Leonti could potentially make such a showing is not "so palpably incredible or patently frivolous as to warrant summary dismissal." *Schaflander,* 743 F.2d at 717.

## CONCLUSION

The Sixth Amendment guarantee of competent counsel applies to the process of cooperation with the government because this is a critical stage of the proceeding for those charged with federal crimes. Taken as true, Leonti's factual allegations state a claim for relief based on his attorney's failure to be a meaningful advocate during Leonti's attempted cooperation, and the effect this failure likely had on the government's decision not to make a substantial assistance motion. Because there were issues of fact whose resolution could have led to such a finding, the district court's decision not to grant an evidentiary hearing was an abuse of discretion.

**REVERSED AND REMANDED.**