**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0296n.06**
**Filed: May 1, 2006**

**No. 04-6243**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| *Plaintiff-Appellee*, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| v. | ) | |
| | ) | **O P I N I O N** |
| **PATRICK KEITH CARVER**, | | |
| | | |
| *Defendant-Appellant*. | | |

**BEFORE:** **KENNEDY, COLE, and McKEAGUE, Circuit Judges.**

**R. GUY COLE, JR., Circuit Judge.** Defendant-Appellant Patrick Keith Carver pleaded guilty to conspiring to distribute in excess of fifty grams of a substance containing methamphetamine. Carver now challenges his conviction and sentence on the basis that he received ineffective assistance of counsel. Specifically, Carver argues that his since-replaced counsel, Rayburn McGowan, communicated poorly with the prosecutor, with the result that Carver lost the opportunity to receive a downward departure for cooperating with the government. For the reasons that follow, we **AFFIRM** Carver's conviction and sentence.

**I.**

Carver and a co-defendant, Ronnie Dixon, were indicted on one count each of conspiracy to distribute in excess of 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. In an interview with FBI Special Agent Barton Brown on December 17, 2001, Carver indicated that he had, on four separate occasions between 1998 and 1999, conducted quarter-pound drug

transactions directly with Dixon. Carver also informed Brown that he was willing to testify to this effect at Dixon's trial. Dixon was charged in eight other counts involving drug-related activity. Carver's statements to Brown underpinned all but two of the additional counts against Dixon.

In exchange for his anticipated assistance, Carver was offered a plea agreement whereby he would plead guilty to conspiracy to distribute in excess of fifty grams of methamphetamine, as opposed to the 500 grams set forth in the indictment, and the government would recommend a downward departure in his sentence. Carver's attorney—Rayburn McGowan—kept in regular contact with the prosecutor. In January of 2003, however, Carver told McGowan that his December 17 statement to Special Agent Brown had been partially incorrect. Rather than conducting four transactions directly with Dixon, Carver had in fact transacted with Dixon once directly, and three other times through another party. Carver did not mention this third party to Brown or to the prosecutor because Carver was trying to protect the third party from prosecution. According to his statement at Carver's sentencing hearing, McGowan did not perceive this distinction to be significant. Consequently, he did not inform the prosecutor of the discrepancy.

Three days before Dixon's trial was to commence, Carver informed Dixon's prosecutor that Carver had engaged in a direct drug transaction with Dixon on only one occasion. The prosecutor immediately withdrew the proposed plea agreement she had drafted for Carver and filed a motion to continue Dixon's trial. Ultimately, Dixon pleaded guilty to the two counts that were not supported by Carver's testimony. McGowan filed a motion to withdraw as Carver's counsel, which was granted on December 11, 2003.

On December 22, Kathleen Morris was appointed to represent Carver. Carver indicated his intention to plead guilty. The government agreed to a plea agreement whereby Carver would plead guilty to conspiracy to distribute in excess of fifty grams of methamphetamine and the government would agree to recommend a three-level reduction for acceptance of responsibility. Carver waived his right to appeal his conviction or sentence, except that the waiver "does not apply to a claim of involuntariness, prosecutorial misconduct, ineffective assistance of counsel, or if the court departs upward."[1] At sentencing, the district court adopted the Presentence Investigation Report, which recommended a guideline range of seventy to eighty-seven months. The court imposed a sentence of seventy-two months, and denied Carver's request for downward departure. This timely appeal followed.

**II.**

The Sixth Amendment violation of which Carver complains, namely, that he received ineffective assistance of counsel, occurred, if at all, prior to Carver's entry of a guilty plea. Ordinarily, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*

---

[1]On April 7, 2005, the government moved to dismiss this appeal "because the Defendant waived his appellate rights as part of the plea agreement." The record shows that Carver submitted a Petition to Enter a Plea of Guilty on March 10, 2004. The petition makes no mention of appellate rights, except to say that Carver can appeal the court's application of the sentencing guidelines. On the same day, Carver and the government signed a plea agreement, which states in no uncertain terms that Carver may appeal on the ground of, *inter alia*, ineffective assistance of counsel. Accordingly, the government's motion was properly denied.

*v. Henderson*, 411 U.S. 258, 267 (1973). In *Tollett*, the defendant showed, *inter alia*, that African Americans had been systematically excluded from the grand jury that indicted him. Yet the Court denied relief, reasoning that the defendant's subsequent "guilty plea represent[ed] a break in the chain of events which ha[d] preceded it in the criminal process." *Id.*

The Supreme Court has carved out an exception to *Tollett*, however, where "state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues." *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975); *see also Canary v. Bland*, 583 F.2d 887, 889-90 (6th Cir. 1978). In *Lefkowitz*, the defendant pleaded guilty in state court but reserved the right to appeal the denial of his motion to dismiss. He subsequently filed a petition for writ of habeas corpus in federal court, which the Supreme Court eventually granted. In this case, Carver has reserved his right, albeit in federal court, to appeal on the basis of ineffective assistance of counsel.

Assuming *arguendo* that Carver may proceed in light of the *Lefkowitz* exception to *Tollett*, we find that the record in this case is insufficiently developed for Carver to make out a claim for ineffective assistance of counsel. We are generally reticent to address claims of ineffective assistance of counsel on direct appeal. *See United States v. Osborne*, 402 F.3d 626, 630 (6th Cir. 2005); *United States v. Pruitt*, 156 F.3d 638, 646 (6th Cir. 1998). Such claims often require factual development, which this Court is ill-equipped to undertake. *Pruitt*, 156 F.3d at 646; *United States v. Jackson*, 181 F.3d 740, 747 (6th Cir. 1999). Thus, unless the issue was "presented with sufficient clarity and completeness" in district court, *Pinney Dock & Trans. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988), an appellate court should require that the defendant bring any ineffective

assistance claim in a post-conviction proceeding, where the record can be fully developed. *Cf.*

*Massaro v. United States*, 538 U.S. 500, 504 (2003) ("In light of the way our system has developed,

in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of

ineffective assistance.").

In this case, several factual questions remain undeveloped. Most notably, there has been no

determination of prejudice, which is a necessary element in any ineffective assistance claim. *See*

*Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("[T]he defendant must show that the deficient

performance prejudiced the defense."). To show prejudice, a "defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 693.

McGowan represented at Carver's sentencing hearing that he did not inform the prosecutor

that Carver had changed his story because he did not believe the discrepancy to be significant. Yet

it is entirely unclear from the record what effect, if any, McGowan's prompt notification to the

prosecutor would have had. As it turned out, Carver's admission that he did not deal with Dixon

directly occurred on the eve of Dixon's trial. This proved devastating to the government's case.

That the prosecutor would have left the downward departure on the table had Caver admitted the

discrepancy earlier, however, is nothing more than speculation. On appeal, the government

emphatically denies that Carver would have received a downward departure had McGowan relayed

the information in question, but ultimately this question goes beyond the present record.

Of course, in the context of a guilty plea, the defendant must show not only that the result

would have been different had counsel not erred, but that the defendant would not have pleaded

guilty but for that error. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). There is evidence in the record tending to demonstrate that Carver intended to plead guilty irrespective of the downward departure he was initially offered: after McGowan was dismissed as counsel, Carver pleaded guilty on the advice of new counsel.

Carver nevertheless urges this Court to follow the Ninth Circuit's decision in *United States v. Leonti*, 326 F.3d 1111 (9th Cir. 2003), which, according to Carver, creates a useful exception to *Hill.* Leonti was a defendant who was approached by the government and asked if he was interested in cooperating with federal agents in their investigation of his criminal associates. *Id.* at 1114. Leonti said he wanted to speak with his lawyer. Leonti subsequently retained a lawyer and informed him that he wished to cooperate. Leonti pleaded guilty and the government agreed to recommend a downward departure for substantial assistance. Leonti thereupon began to confer with federal agents. However, because Leonti's attorney took no steps to facilitate the cooperation, Leonti was never able to assist the agents meaningfully. *Id.* at 1116. As a consequence, the government withdrew its recommendation, and Leonti did not receive a downward departure. He subsequently filed a petition in district court, pursuant to 28 U.S.C. § 2255, alleging inefficient assistance of counsel. The court denied the petition without an evidentiary hearing.

On appeal, the Ninth Circuit held that Leonti was entitled to an evidentiary hearing. The court reasoned that "substantial assistance has become the last, best hope of . . . many defendants," and accordingly, "the guarantee of competent counsel must apply to the process of seeking such a recommendation." *Id.* at 1118. Assuming Leonti's allegations to be true, the court found that Leonti's counsel "never did *anything* to make it more likely that Leonti would in fact be able to

provide substantial assistance." *Id.* at 1121. Thus, Leonti's counsel "'was not functioning as the counsel guaranteed by the Sixth Amendment' during Leonti's period of cooperation." *Id.* (internal quotations omitted).

We are not bound by *Leonti*, and it is in any event easily distinguishable. Leonti brought his ineffective-assistance-of-counsel claim on collateral review, and the *Leonti* Court accepted Leonti's allegations as true for purposes of determining whether an evidentiary hearing was warranted. 326 F.3d at 1116. In contrast, it is Carver's burden to prove ineffective assistance and prejudice on appeal, *Strickland*, 466 U.S. at 687, which he cannot do on the present record, *see Jackson*, 181 F.3d at 747 ("[C]laims of ineffective assistance of counsel require a factual finding of prejudice, and appellate courts are not well-equipped to undertake the resolution of factual issues."). Nor can Carver prove, on the present record, that his solitary direct transaction with Dixon had value to the government. In contrast, it was undisputed that Leonti had substantial assistance to provide the government and that, but for his counsel's error, his cooperation would have resulted in a recommendation of a lower sentence. *Leonti*, 326 F.3d 1115-16.

### III.

Accordingly, we decline to consider Carver's claim of ineffective assistance of counsel, and **AFFIRM** his conviction and sentence.